UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. JANE A RESTANI, JUDGE

_____
                                      :

ILDICO INC.,                             :

                                        :

                     Plaintiff,        :               Court No. 18-00136

                                        :                     18-00076

                   v.                 :

                                        :

UNITED STATES,                     :

                                        :

                     Defendant.       :
_____:

## **<u>ORDER</u>**

      Upon consideration of defendant's cross-motion for summary judgment, plaintiff's

motion for summary judgment, other papers on file, and upon due deliberation; it is hereby

      **ORDERED** that defendant's cross-motion be and hereby is granted; and it is further

      **ORDERED** that plaintiff's motion for summary judgment be and hereby is denied; and it

is further

      **ORDERED** that this action is dismissed.


                                      _____
                                            JUDGE

Dated: _____
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

———————————————————————— :
                                              :
ILDICO INC.,                                  :
                                              :
                        Plaintiff,            :        Court No. 18-00136
                                              :                  18-00076
            v.                                :
                                              :
UNITED STATES,                                :
                                              :
                        Defendant.            :
———————————————————————— :

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MARCELLA POWELL
Of Counsel:                                     Senior Trial Counsel
Fariha Kabir                                    Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel           Commercial Litigation Branch
International Trade Litigation                   26 Federal Plaza, Room 346
U.S. Customs and Border Protection              New York, New York 10278
                                                Tel. (212) 264-9230 or 9236
Dated: May 30, 2024                             Attorneys for Defendant

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    A.  THE MERCHANDISE AT ISSUE/ADMINISTARTIVE HISTORY ......................... 2

    B.  THE RECORD IN THIS CASE CONCERNING THE NATURE AND
        CHARACTERISTICS OF THE THIRTY-FIVE STYLES OF IMPORTED
        WATCHES............................................................................................................ 4

QUESTION PRESENTED............................................................................................. 5

SUMMARY OF THE ARGUMENT ............................................................................ 5

ARGUMENT .................................................................................................................. 6

  I.     STANDARD OF REVIEW ................................................................................. 6

  II.    THE STATUTORY FRAMEWORK ................................................................ 9

  III.   ON THIS RECORD, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
       SHOULD BE DENIED FOR FAILURE OF PROOF.................................... 10

  IV.   THE IMPORTED WATCHES ARE NOT CLASSIFIABLE IN HEADING 9101,
       HTSUS, BECAUSE THEIR CASES ARE NOT "OF PRECIOUS METAL" ............. 13

    A.  The HTSUS Headings, Legal Notes, And Explanatory Notes Exclusively
        Govern The Classification Of The Imported Watches.................................... 13

    B.  The inner Case, Middle Case, Outer Case, Synthetic Sapphire Crystal Case Back,
        Screws, Washers, And Case Back Gasket Are Embraced By The HTSUS
        Definition Of "Cases" And Are Not "Of Precious Metal"........................... 17

  V.    HEADING 9101, HTSUS, DOES NOT REQUIRE THAT ONLY THE
       "PRINCIPAL PARTS" OF THE WTCH BE "OF PRECIOUS METAL" .................. 19

  VI.   THE CLASSIFICATION OF THE INDIVIDUAL COMPONENTS OF
       THE WATCHES ARE IMMATERIAL BECAUSE THE WATCHES ARE
       CLASSIFIABLE IN THEIR CONDITION AS IMPORTED
       AS FULLY ASSEMBLED GOODS .............................................................. 23

    A.  The Titanium Screws And Washers Are Not "Parts Of General Use" ...................... 23

B. Even If The Synthetic Sapphire Crystal Case Back Is Considered " Watch Glass, " The Case Is Still Covered By Note 1(b)'s Definition Of The Term "Cases" ......................................................................................... 24

VII.    THE TRIAL COURT IS NOT BOUND BY CBP'S ADMINSTRATIVE CLASSIFICATION RULINGS ...................................................................... 25

VIII.    THE WATCHES AT ISSUE ARE PROPERLY CLASSIFIABLE IN HEADING 9102, HTSUS ................................................................................. 27

CONCLUSION ....................................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ................................................................................................ 6

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................................. 8, 9

*Avenues in Leather, Inc. v. United States*,
423 F.3d 1326 (Fed. Cir. 2005) ............................................................................. 9

*BASF Corp. v. United States*,
482 F.3d 1324 (Fed. Cir. 2007) ............................................................................. 9

*Carl Zeiss, Inc. v. United States*,
195 F.3d 1375 (Fed. Cir. 1999) ........................................................................... 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................... 6, 8, 9, 10, 11

*Ciba Vision Corp. v. United States,*
36 Ct. Int'l Trade 1256  (2012) ........................................................................... 10

*Connecticut Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ............................................................................................. 20

*Deckers Outdoor Corp. v. United States*,
714 F.3d 1363 (Fed. Cir. 2013) ..................................................................... 14, 20

*Del Monte Corp. v. United States*,
730 F.3d 1352 (Fed. Cir. 2013) ........................................................................... 20

*Essex Mfg. v. United* States,
30 Ct. Int'l Trade 1 (2006) ................................................................................... 8

*Ford Motor Co. v. United States,*
157 F.3d 849 (Fed. Cir. 1998) ............................................................................... 8

*Ford Motor Co. v. United States*,
811 F.3d 1371 (Fed. Cir. 2016) ............................................................................. 7

*Ford Motor Co. v. United States*,
926 F.3d 741 (Fed. Cir. 2019) ............................................................................. 12

*Home Depot U.S.A., Inc. v. United States,*
491 F.3d 1334 (Fed. Cir. 2007) ......................................................................... 10

*Jarvis Clark Co. v. United States,*
733 F.2d 873 (Fed. Cir. 1984) ............................................................................. 7

*Johnston v. IVAC Corp.,*
885 F.2d 1574 (Fed. Cir. 1989) ...................................................................... 8, 11

*LB Watson, Co. v. United States,*
79 Cust. Ct. (1971) ............................................................................................ 12

*Lerner New York, Inc. v. United States,*
908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) ................................................ 7, 26

*LF USA, Inc. v. United States,*
290 F. Supp. 3d 1339 (Ct. Int'l Trade 2017) .................................................... 20

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ....................................................................................... 6, 11

*MetChem, Inc. v. United States,*
513 F.3d 1342 (Fed. Cir. 2008) ........................................................................ 26

*Mita Copystar America v. United States,*
21 F.3d 1079 (Fed. Cir. 1994) .................................................................... 10, 23

*Mondiv, Div. of Lassonde Specialties Inc. v. United States,*
329 F. Supp. 3d 1331 (Ct. Int'l Trade 2018) ..................................................... 7

*Pillowtex Corp. v. United States,*
171 F.3d 1370 (Fed. Cir. 1999) ........................................................................ 20

*Plexus Corp. v. United States,*
489 F. Supp. 3d 1379 (Ct. Int'l Trade 2020) ................................................... 23

*Reiter v. Sonotone Corp.,*
442 U.S. 330 (1979) .......................................................................................... 22

*Russell Stadelman & Co. v. United States,*
242 F.3d 1044 (Fed. Cir. 2001) ........................................................................ 14

*Sarne Handbags Corp. v. United States,*
24 Ct. Int'l Trade 309 (2000) ............................................................................ 20

iv

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ............................................................................................ 26

*Sparks Belting Co. v. United States*,
715 F. Supp. 2d 1305 (Ct. Int'l Trade 2010) ................................... 8, 11, 12

*Sparks Belting Co. v. United States*,
35 Ct. Int'l Trade .............................................................................................. 12

*Sparks Belting Co. v. United States*,
755 F. Supp. 2d 1305 (Ct. Int'l Trade 2010) ........................................... 13

*Sweats Fashion, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987) ..................................................................... 9

*Telebrands Corp. v. United States*,
865 F. Supp. 2d 1277 (2012)
*aff'd* 552 Fed. Appx. 915 (Fed. Cir. 2013) ............................................... 9

*Texas Apparel Co. v. United States*,
698 F. Supp. 932 (1988)
*aff'd* 883 F.2d 66 (Fed. Cir. 1989) .............................................................. 7

*United States v. Citroen*,
223 U.S. 407 (1912) ......................................................................................... 12

*United States v. Mead Corp.*,
533 U.S. 218 (2001) ......................................................................................... 26

*United States v. Pan Pac. Textile Group Inc.*,
276 F. Supp. 2d 1316 (2003) ......................................................................... 6

*Univ. Elecs. Inc. v. United States*,
112 F.3d 488 (Fed. Cir. 1997) ....................................................................... 7

*Witex, U.S.A., Inc. v. United States*,
28 Ct. Int'l Trade 1907 (2004) ..................................................................... 14

**Harmonized Tariff Schedule Of The United States**

General Rules of Interpretation 1 ......................................................... 9, 10

General Rules of Interpretation 6 ............................................................. 10

Chapter 71

Note 4(a) ............................................................................................................. 17

Note 5 ............................................................................................................... 17

Note 6 ............................................................................................................... 17

Note 7 ............................................................................................................... 22

Note 71 ............................................................................................................. 22

Chapter 73

   Heading 7318 ................................................................................................. 23

Chapter 91

   Heading 9101 ..................................................................................... *passim*

     Subheading 9101.21.50 ................................................................................. 3

     Subheading 9101.29.90 ................................................................................. 3

   Heading 9102 ....................................................................... 2, 10, 13, 14

     Subheading 9102.21.70 ........................................................................... 2, 3

Note 1(a) ................................................................................... 14, 24, 25

Note 1(b) ........................................................................................ *passim*

Note 2 ............................................................................................ *passim*

Note 3(h)(v)(A) ............................................................... 16, 17, 19, 23

Heading 9111 ................................................................................... 23, 24

Heading 9114 ............................................................................................. 24

**Statutes**

19 U.S.C. § 1514(a) ............................................................................... 25

19 U.S.C. § 1515 .................................................................................... 25

28 U.S.C. § 1581(a) ............................................................................ 7, 25

28 U.S.C. § 2640(a)(1) ....................................................................... 7, 25

**Rules**

USCIT Rule 56 ...................................................................................................... 1

USCIT Rule 56(c) ........................................................................................... 6, 8, 9

USCIT Rule 73.3 .................................................................................................... 5

**Other Authorities**

ALLOY, McGraw-Hill Dictionary of Scientific and Technical Terms (3rd ed. 1978).................. 18

AUXILIARY, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/auxiliary.......................... 21

IDENTICAL, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/incidental ....................... 21

MINOR, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/minor .............................. 21

NY N268252 ......................................................................................................... 26

HQ H285165 ..................................................................................................... 26, 27

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. JANE A. RESTANI, JUDGE

_____
                                                     :
ILDICO INC.,                                   :
                                                     :
                              Plaintiff,      :                    Court No. 18-00136
                                                     :                                   18-00076
              v.                                   :
                                                     :
UNITED STATES,                           :
                                                     :
                              Defendant.    :
_____:

### DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFF'S MOTION FORSUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, United States (the Government), cross-moves for summary judgment, requesting that the Court respectfully: (1) deny plaintiff's Ildico Inc. (plaintiff or Ildico), motion for summary judgment; (2) grant our motion for summary judgment; (3) enter judgment for defendant and dismissing this action; and (4) grant defendant such other and further relief as may be just and appropriate. Summary judgment in favor of defendant is appropriate because there are no genuine issues of material fact, and defendant is entitled to judgment in its favor as a matter of law.

### INTRODUCTION

This consolidated case involves the classification of 35 styles of Richard Mille brand luxury wrist watches imported by plaintiff, Lirico.  Ildico maintains that the imported watches

are classifiable under heading 9101, HTSUS[1], which covers wrist watches with a case of precious metal.  U.S. Customs and Border Protection (CBP) classified the watches at liquidation under heading 9102, HTSUS[2], as wrist watches of materials other than precious metal.  Ildico cannot establish on the record before this Court that all styles of imported watches have a case of precious metal.  As such, Ildico's evidence is insufficient to establish the elements for classification in heading 9101, HTSUS; that is, there is a failure of proof by plaintiff.  On a motion for summary judgment, the plaintiff must set forth sufficient evidence to establish the essential elements of its claim, which Ildico failed to do here.

Notwithstanding, Ildico was able to produce samples of three watch styles at issue in this case.  Those models, however, do not represent the 35 styles at issue because the watches are highly stylized.  Should the Court accept these three styles as representative of all 35 styles, and address the merits of the classification issue, the evidence shows that the watches fall short of classification pursuant to heading 9101 because the watches do not have cases that are "of precious metal."  Because the cases are not of precious metal, classification is appropriate under heading 9102, HTSUS.

**BACKGROUND**

**A.    THE MERCHANDISE AT ISSUE/ADMINISTRATIVE HISTORY**

The imported goods at issue in this consolidated action are Richard Mille brand luxury watches.  Court No. 18-00076 covers five entries made at the Port of Los Angeles International

---

[1] Heading 9101, HTSUS, provides for "[w]rist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal. . . ."

[2] Heading 9102, HTSUS, provides for "[w]rist watches, pocket watches and other watches, including stop watches, other than those of heading 9101. . . ."

Airport, California on February 2016.  The entries were liquidated from December 2016 through February 2017.  Court No. 18-00136 covers 44 entries made at the Port of Los Angeles International Airport, California during the period from August 2015 through July 2016.  All entries liquidated from July 2016-2017.  CBP classified the watches upon liquidation under subheading 9102.21.70 of the Harmonized Tariff Schedule of the United States (HTSUS)[3], at the rate of 4.2% *ad valorem* for the watch case, 9.8% *ad valorem* for the strap, band or bracelet, and $1.53 each for the watch movement.  There are thirty-five (35) styles of watches at issue.

Ildico asserts that the correct classification for the automatic watches is subheading 9101.21.50, HTSUS[4], for automatic watches, and the watches without automatic winding is subheading 9101.29.90, HTSUS[5].

---

[3] Subheading 9102.21.70, HTSUS, provides for "wrist watches, pocket watches and other watches, including stop watches, other than those of heading 9101: Other wrist watches, whether or not incorporating a stop watch facility: With automatic winding: Having  over 17 jewels in the movement; With strap, band or bracelet of textile material or of base metal, whether or not gold or silver plated . . . .$1.53 + 4.2% on the case +2% on the strap, band or bracelet."

[4] Subheading 9101.21.50, HTSUS, provides for "wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or metal clad with precious metal: Other wrist watches, whether or not incorporating a stop watch facility: With automatic winding: Having over 17 jewels in the movement: Straps, bands or bracelets entered with watches of subheading 9101.21.50 and classifiable therewith pursuant to additional U.S. note 2 to this chapter; all of the foregoing whether or not attached to such watches at the time of entry: . . . Other."

[5] Subheading 9101.29.90, HTSUS, provides for "wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal: Other wrist watches, whether or not incorporating a stop watch facility: Other:  Having over 17 jewels in the movement:  Straps, bands or bracelets entered with watches of subheading 9101.29.90 and classifiable therewith pursuant to additional U.S. note 2 to this chapter; all the foregoing whether or not attached to such watches at the time of entry:  Other."

B.    **THE RECORD IN THIS CASE CONCERNING THE NATURE AND CHARACTERISTICS OF THE THIRTY-FIVE STYLES OF IMPORTED WATCHES.**

In discovery, the Government sought to confirm the nature and material characteristics of the imported watches.  Specifically, we requested representative samples of each of the 35 styles of watches at issue as well as purchase orders, bills of materials, and specifications for every style of imported watch at issue.  Ildico did not produce the requested documentation for every style of imported watches.  *See* Ex. 1, Pl.'s Resp. to Def.'s Request for Production and Things, Response Nos. 3, 7, 8, and 11 and Ex. 2, Pl.'s Resp. to Def.'s Second Request for Production and Things.  Instead, Ildico produced generic specifications for some of the models, not styles, that are at issue and for models that are not at issue.  *See* Pl.'s Rubiano Dec. at ¶¶ 38, 47 and Ex. 3; Def.'s Ex. 3, Rubiano Dep. Tr. 55:15-25; Pl.'s Br. at 6 n.4 .  Ildico also produced "stock" photographs of the fronts of models of watches.  Ildico only made three samples of watches available for examination by the Government.  Given that each style of Richard Mille watch is highly specialized, the samples cannot serve as representative for the 35 styles at issue.

Furthermore, without the requested representative samples and documentation, the Government could not confirm that the watches identified on the invoices by serial numbers were actually imported into the United States.  We also could not confirm the size of the movement of each watch, the presence of a crystal case back[6] on each watch that is verifiably composed of synthetic sapphire, the number of jewels in each watch's movement, and the composition of the parts, pieces, and features of the watch that are relevant to the tariff classification of the watches.

---

[6] The parties appear to use the term "case back" to refer to different parts of the watch. The Government uses the term to refer to the synthetic sapphire crystal on the back of the watch. Plaintiff uses the term to refer to only the gold alloy frame. *See* Pl.'s Br. at 22.

The commercial invoices for the imported watches contain limited information including the serial number for each watch, type of movement, white gold or red gold, and an indication as to whether the bezel is set with gemstones. *See* Docket No. 5, USCIT Rule 73.1 Documents. Some of the invoices are accompanied by a declaration that includes the number of jewels in the movement of the watch. The invoices do not provide any further information regarding the measurements of the movements, the presence of a synthetic sapphire crystal or the constituent material of the other pieces, parts and features that make up the "cases" of the watch.

## QUESTION PRESENTED

Whether the imported wrist watches are properly classifiable in heading 9101, HTSUS, as wrist watches with case of precious metal, or heading 9102, HTSUS, as wrist watches of materials other than precious metal.

## SUMMARY OF THE ARGUMENT

Summary judgment for the Government is warranted. This is a simple, straight forward classification case. However, Ildico has not proffered sufficient evidence to establish the nature and characteristics of the subject watches that are necessary for their classification. Accordingly, Ildico's motion for summary judgment should be denied for failure of proof and granted in our favor.

Alternatively, should the Court consider the evidence on the record, the information developed in discovery shows that the cases of the imported watches are not made of precious metal. Ildico argues that the watches at issue are classifiable in heading 9101, HTSUS, because they have cases made "of precious metal." The HTSUS provides a comprehensive statutory framework and the HTSUS definition of the term "cases" covers, among other things, the "pieces and parts" and "auxiliary and incidental features" that serve to complete the watches of Chapter

5

91. *See* Chapter 91, Note 1(b).  Because the watches at issue have an inner case, middle case, outer case, titanium screws, copper-nickel-zinc washers, synthetic sapphire crystal case back, and crystal gasket, those components serve to complete the watch and are covered by the definition of "cases."

Furthermore, heading 9101, HTSUS, only covers cases that are "*wholly of* precious metal."  *See* Chapter 91, Note 2 (emphasis added).  It is undisputed that the titanium screws, copper-zinc-nickel washers, synthetic sapphire case back, and crystal gasket are not made "wholly of precious metals."  The inner case, middle case, and outer case are made of a gold alloy.  Gold alloy is not considered a "precious metal" for purposes of heading 9101, HTSUS.  Therefore, the watches are not classifiable in heading 9101, HTSUS.  Accordingly, the watches are properly classifiable in heading 9102, HTSUS.

## ARGUMENT

## I.    STANDARD OF REVIEW

Under Rule 56 of the United States Court of International Trade, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of fact exists, the court reviews the evidence submitted, drawing all inferences against the moving party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (2003); *see also Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial.  *See, e.g., Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 157 (1970).  The movant may satisfy this burden by noting that the party who will bear the ultimate burden of proof at trial cannot support an essential element of its claim. *See, e.g., Celotex*, 477 U.S. at 322-23.

In cases filed under 28 U.S.C. § 1581(a), the Court's standard of review is *de novo*, which means the Court renders its final decision "based on a complete record developed before the court" rather than on any record developed during an administrative proceeding.  *Ford Motor Co. v. United States*, 811 F.3d 1371, 1379 (Fed. Cir. 2016); 28 U.S.C. § 2640(a)(1).  Plaintiff has the burden of establishing that the Government's classification was incorrect (and that its claimed classification was correct), and the Court then has an "independent duty to arrive at the correct result."  *Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1317-18 (Ct. Int'l Trade 2013) (internal quotation marks omitted); *see also Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (holding that the Court is "required to reach a *correct* result." (emphasis in original)).  Notably, CBP "is afforded a statutory presumption of correctness in classifying merchandise under the HTSUS, but this presumption does not apply to pure questions of law."  *Mondiv, Div. of Lassonde Specialties Inc. v. United States*, 329 F. Supp. 3d 1331, 1337 (Ct. Int'l Trade 2018) (citing *Univ. Elecs. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997)).  "The presumption of correctness [however] certainly carries force on any factual components of a classification decision, such as whether the subject imports fall within the scope of the tariff provision, because *facts* must be proven via *evidence." Univ. Elecs. Inc.*, 112 F.3d at 492 (emphasis in original).

"This Court may resolve a classification issue by means of summary judgment . . . 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" *Essex Mfg. v.*

7

*United* States, 30 Ct. Int'l Trade 1, 3 (2006) (quoting USCIT R. 56(c)). That is, the Court must

determine "whether there are any factual disputes that are material to the resolution of the

action." *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (1988), *aff'd*, 883 F.2d 66

(Fed. Cir. 1989), cert. denied, 493 U.S. 1024 (1990); *see Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 247-48 (1986).

At summary judgment, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson*, 477 U.S. at 249; *see Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed. Cir.

1998). However, "there is no issue for trial *unless there is sufficient evidence* favoring the

nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249

(emphasis added). It is as to the sufficiency of its evidence that plaintiff's claim fails in this case.

The Supreme Court in *Celotex Corp.*, 477 U.S. at 322-23, provided the relevant standard,

holding that:

> the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion,
> against a party *who fails to make a showing sufficient to establish*
> *the existence of an essential element to that party's case, and on*
> *which that party will bear the burden of proof at trial.* In such a
> situation, there can be 'no genuine issue as to any material fact,'
> *since a complete failure of proof concerning an essential element*
> *of the nonmoving party's case renders all other facts immaterial.*"

*Id.* (emphasis added); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989) (quoting

*Celotex*, 477 U.S. at 322-23); *Sparks Belting Co. v. United States*, 715 F. Supp. 2d 1305, 1313

(Ct. Int'l Trade 2010) ("Summary judgment must be entered against a party who fails to make a

showing sufficient to establish the existence of an essential element to its case.") Where there is

such a "failure of proof" as to an essential element of a claim on which a party bears the burden

of proof, the other party (that has made a motion pursuant to R. 56(c)) "is 'entitled to a judgment

as a matter of law.'" *Celotex,* 477 U.S. at 323. Indeed, it is "[o]ne of the principal purposes of the summary judgment rule . . . to isolate and dispose of factually unsupported claims or defenses, and [according to Supreme Court] . . . it should be interpreted in a way that allows it to accomplish this purpose." *Id.*

Here, Ildico's proof fails to establish the nature, characteristics, and features of the watches that are relevant to their classification. Ildico has not provided representative samples of each of the thirty-five (35) styles of watches at issue or specifications for those watches. Stock photographs of fronts of watches are insufficient. However, if the Court determines that Ildico has sufficiently established the nature and characteristics of the watches with the proof on this record, then there are no genuine materials issues of fact. Therefore, this action involves only questions of law and is ripe for summary judgment. *See, e.g., Anderson*, 477 U.S. at 247-248 (1986); *Celotex,* 477 U.S. at 325-328; *Sweats Fashion, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562-63 (Fed. Cir. 1987).

## II.    THE STATUTORY FRAMEWORK

In construing the HTSUS, the Court is bound to apply the General Rules of Interpretation (GRIs), which must be applied in numerical order. *BASF Corp. v. United States*, 482 F.3d 1324, 1326 (Fed. Cir. 2007). GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005). The HTSUS is designed so that most classification questions can be answered by GRI 1." *Telebrands Corp. v. United States*, 865 F. Supp. 2d 1277, 1280 (2012), *aff'd*, 522 Fed. Appx. 915 (Fed. Cir. 2013). "What is clear from the legislative history of the World Customs Organization and case law is

that GRI 1 is paramount . . . The HTSUS is designed so that most classification questions can be answered by GRI 1, so that there would be no need to delve into the less precise inquiries . . . ." *Id*.

GRI 6 governs the classification of merchandise within a subheading and requires the sequential reapplication of GRIs 1 through 5 to the particular subheadings under consideration. ("[C]lassification of goods in the subheading of a heading shall be determined according to the terms of those subheadings any related notes, mutatis mutandis, to the above rules.")

Courts may look to the Explanatory Notes (ENs) to the Harmonized Commodity Description and Coding System, maintained by the World Customs Organization, as persuasive authority on how to interpret and apply HTSUS provisions. *See Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1336 (Fed. Cir. 2007). "[A]lthough the Explanatory Notes 'do not constitute controlling legislative history,' they serve a critical function as an interpretative supplement to the HTSUS, and 'are intended to clarify the scope of HTSUS [provisions,] and to offer guidance in interpreting [those provisions].'" *See Ciba Vision Corp. v. United States,* 36 Ct. Int'l Trade 1256 n.12 (2012) *(citing Mita Copystar America v. United States,* 21 F.3d 1079, 1082 (Fed. Cir. 1994)).

In this action, GRI 1 resolves the classification of the watches at issue, and therefore it is not necessary to resort to the remaining GRIs. The plain language of headings 9101 and 9102, HTSUS, the relevant legal notes, and the Explanatory Notes establish that the watches are properly classifiable in heading 9102, HTSUS.

## III.    ON THIS RECORD, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED FOR FAILURE OF PROOF.

In a classification case, the importer "bears the burden of offering evidence to support its claim[ed]" classification. *See Sparks Belting Co.*, 715 F. Supp. 2d at 1313. When the

evidentiary burden of establishing the essential elements of its claim falls on the non-moving

party (here plaintiff), our burden, on summary judgment, "may be discharged by 'showing' –

that is, pointing out to the district court – that there is an absence of evidence to support the

[plaintiff's] . . . case." *Celotex*, 477 U.S. at 325; *see Johnston*, 885 F.2d at 1577 ("summary

judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant

carries its burden of 'pointing out to the district court that there is an absence of evidence to

support the nonmoving party's case.'").

When the burden of identifying the absence of evidentiary support as to the essential

elements of plaintiff's case has been met, plaintiff "must do more than simply show that there is

some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986).  It is appropriate for this Court to enter judgment when plaintiff

has failed to proffer evidence to substantiate its claims.  For example, in *Sparks Belting Co.*, 715

F. Supp. 2d at 1313-15, the parties disputed classification of several conveyor belts, and the

Court granted the Government's motion as a matter of law on several models of conveyor belts

based on a failure of proof by the importer – in that case a failure to provide evidence necessary

to properly classify the goods.  The Court found that plaintiff "bears the burden of offering

evidence to support" its claimed classification.  *Id.* at 1313.  The Court further noted that plaintiff

must provide evidence of the "essential characteristics [of each product] required by the relevant

tariff provisions," and that samples of the product likely would have met plaintiff's burden.  *Id.*

at 1314-15.  However, the evidence actually provided *in Sparks* "fail[ed] to establish *with

certainty*, the essential characteristics, nature, and identify of the merchandise . . . ."  *Id.*

"[B]ecause [p]laintiff . . . failed to establish the existence of elements essential to its case, and on

which it bears the burden of proof at trial," the Government was entitled to summary judgment. *Id.* at 1315.

"[I]n order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." *Ford Motor Co. v. United States*, 926 F.3d 741, 752 (Fed. Cir. 2019); *United States v. Citroen*, 223 U.S. 407, 414–15 (1912) (internal quotation marks and citations omitted). While samples of the merchandise are not necessary, the importer must present adequate evidence to establish the nature and relevant characteristics of the imported goods. *Sparks Belting*, 35 Ct. Int'l Trade at 662 (citing *LB Watson, Co. v. United States,* 79 Cust. Ct. at 87 (1971)). Thus, the threshold issue here is whether Ildico's evidence as a whole succeeds in establishing the relevant characteristics of the imported watches.

There are 35 styles of watches at issue. Ildico has not provided the Court or the Government with representative samples of each of the 35 styles of watches. Ildico also has not provided documentation that would establish that the articles listed on the commercial invoices were actually imported, or documentation that establishes the nature and characteristics of the specific styles of watches identified on the commercial invoices.

Ildico has provided the Declaration of Michelle Shipley and the Declaration of Anton Rubianto. However, the declarations highlight the paucity of Ildico's record evidence. Neither of those declarants indicate that they have seen or examined the actual 35 styles of watches at issue in this action, which are identified by serial number on the commercial invoices. The exhibits to Mr. Rubianto's declaration are undated "stock" images of the front of watches and undated specification sheets for generic models of watches that are both at issue and not at issue. *See* Declaration of Anton Rubianto, ¶¶ 16 and 38. Ildico does not have a specification sheet for

every style of watch at issue. *See* Def.'s Ex. 3, Rubiano Dep. Tr. 55:16-25. The exhibits to Ms. Shipley's declaration consist of screenshots of internal webpages for three generic models of watches and three hand completed exploded diagrams. *See* Ex. 4, Deposition Transcript of Michelle Shipley (Shipley Dep. Tr.) at 31:18-32:9. Based on the dearth of evidence in the record regarding the 35 watch styles at issue, the Court cannot confirm the presence of certain features of each style at issue, the number of jewels in the movements, or the composition and purpose of the pieces, parts, and features of the watches that are relevant to their classification. Accordingly, Ildico's motion for summary judgment should be denied for failure of proof. *See, e.g., Sparks Belting*, 755 F. Supp. 2d 1305, 1314-15 (Ct. Int'l Trade 2010).

## IV.    THE IMPORTED WATCHES ARE NOT CLASSIFIABLE IN HEADING 9101, HTSUS, BECAUSE THEIR CASES ARE NOT "OF PRECIOUS METAL."

Should the Court determine that Ildico has sufficiently established the proof necessary to dispose of this action on the merits of the parties' respective motions, we show below that the merchandise at issue is properly classifiable in heading 9102, HTSUS, and not heading 9101, HTSUS.

### A.    The HTSUS Headings, Legal Notes, And Explanatory Notes Exclusively Govern The Classification Of The Imported Watches.

GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes . . ." Thus, the first step in the classification analysis is the language of the headings. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 (Fed. Cir. 2013). Here, the two competing HTSUS headings at issue are:

> 9101:  Wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal:

> 9102:  Wrist watches, pocket watches and other watches, including stop watches, other than those of heading 9101:

An *eo nomine* provision "describes an article by a specific name and, absent terms of limitation, includes all forms of the article." *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citations omitted). Headings 9101 and 9102, HTSUS, are mutually exclusive *eo nomine* provisions. If imported goods are classifiable in heading 9101, they cannot be classified in heading 9102. Thus, the threshold legal question is whether the imported watches are classifiable in heading 9101, HTSUS. As we show below, they are not classifiable in that heading.

"The first step in properly construing a tariff classification term is to determine whether Congress *clearly defined* that term in either the HTSUS or its legislative history." *Russell Stadelman & Co. v. United States,* 242 F.3d 1044, 1048 (Fed. Cir. 2001) (emphasis added); *Witex, U.S.A., Inc. v. United States*, 28 Ct. Int'l Trade 1907 (2004). Heading 9101, HTSUS, covers "Wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal." The HTSUS provides the definitions for the terms "watches," "cases," and "precious metal." Additional U.S. Note 1(a) defines the term "watch" as:

> 1. For the purposes of this Chapter:
>
> a) The term "watches" embraces timepieces (including timepieces having special features, such as chronographs, calendar watches and watches designed for use in skin diving) of a kind for wearing or carrying on the person whether or not the movement contained therein conforms to the definition of "watch movements" in note 3, above. Timepieces incorporating a stand, however simple, are not classifiable as watches.

The parties do not dispute that the goods at issue in this action are wrist "watches." The parties dispute whether the imported wrist watches have "cases" "of precious metal." As we

14

show below, the terms of heading 9101, HTSUS, the relevant legal notes, and the Explanatory

Notes establish that the subject wrist watches do not have cases "of precious metal."

Additional U.S. Note 1(b) to Chapter 91 defines the term "cases" as follows:

> For purposes of this Chapter
>
> The term "cases" "embraces inner and outer cases, containers and housings for movements, *together with parts or pieces, such as, but not limited to rings, feet, posts, bases and outer frames, and any auxiliary or incidental features, which (with appropriate movements) serve to complete the watches,* clocks, time switches and other apparatus provided for in this chapter."

(emphasis added).  By its express terms, Note 1(b)'s definition of the term "cases" is

unambiguous and broad.  Indeed, the definition expands the scope of the term "cases" well

beyond the portion of a watch that houses or contains the movement.  The term also embraces

the "parts and pieces" and any "auxiliary or incidental features" that "serve to complete the

watches . . . provided in this chapter."  The definition also does not mandate that those parts,

pieces, and features be in a specific location within or on the watch.

Heading 9101, HTSUS, covers wrist watches with cases "of precious metals."  The

HTSUS provides binding definitions and instructions that assist in determining the scope of the

term "of precious metals" for purposes of the heading.  Note 2 to Chapter 91, HTSUS, states the

following:

> Heading 9101 covers only watches with case *wholly* of precious metal or of metal clad with precious metal, *or of the same materials* combined with natural or cultured pearls, or precious or semiprecious stones (natural, synthetic or reconstructed) of headings 7101 to 7104.  Watches with case of base metal inlaid with precious metal fall in heading 9102.

(emphasis added).  Note 2 makes clear that the cases of the watches of heading 9101, HTSUS,

fall into three categories:  (1) wholly of precious metal, or (2) of metal clad with precious metal,

or (3) of the same materials combined with natural or cultured pearls, precious or semiprecious stones (natural, synthetic or reconstructed) of headings 7101 to 7104, HTSUS. Ildico argues that its merchandise is covered by the first category, that is, its imported watches have cases "wholly of precious metal." *See* Pl.'s Compl. ¶¶ 17-19. Therefore, Ildico's watches must have cases "wholly of precious metal."

The Explanatory Note to heading 9101, HTSUS, provides guidance as to the scope of the heading and explains Note 2 as follows:

> In accordance with Note 2 to this Chapter, watches of this heading must have cases *wholly of* precious metal or of metal clad with precious metal. They may be set with gem stones or with natural or cultured pearls and may be fitted with a cover or have a bracelet of precious metal (gem set or not).

(emphasis added). The HTSUS in General Note 3(h)(v)(A) defines the term "wholly of" as follows:

> (h).   <u>Definitions</u>. For the purpose of the tariff schedule, unless the context otherwise requires-
>
> (v)    the terms "wholly of", "in part of", and "containing", when used between the description of an article and a material (e.g., "woven fabrics, wholly of cotton"), have the following meanings:
>
> (A) "wholly of" means that the goods are, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material;
>
> *            *            *
>
> With regard to the application of the quantitative concepts above, it is intended that the *de minimus* rule apply

Finally, the term "precious metals" in heading 9101, HTSUS, refers to "silver, gold and platinum." Note 4(a) of Chapter 71, HTSUS[7]. The term "precious metals" may also include alloys of silver, gold and platinum that meet certain requirements unless the HTSUS indicates that alloys are not covered by the term. *See* Note 5 of Chapter 71. Specifically, Note 6 of Chapter 71, HTSUS, provides:

> *Except where the context otherwise requires*, any reference in the Nomenclature to precious metal or to any particular precious metal includes a reference to alloys treated as alloys of precious metal or of the particular metal in accordance with the rules in Note 5 above, but not to metal clad with precious metal or to base metal or non-metals plated with precious metal.

(emphasis added). Here, the "context" of the HTSUS requires that the reference to the term "precious metal" in Note 2 does not include a reference to alloys. Note 2 instructs that only watches with cases "wholly of precious metal" are classifiable in the heading, which means that, except for negligible or insignificant quantities of some other material or materials, the cases must be composed *completely* of precious metal. *See* General Note 3(h)(v)(A).

In sum, the HTSUS provides the statutory framework necessary to classify the watches at issue. The language of heading 9101, the definitions of the terms "watches," "cases," "precious metals," and legal notes are all that is needed for the classification of those goods.

## B.    The Inner Case, Middle Case, Outer Case, Synthetic Sapphire Crystal Case Back, Screws, Washers, And Case Back Gasket Are Embraced By The HTSUS Definition Of "Cases" And Are Not "Of Precious Metal"

The second step in the classification analysis is to apply the HTSUS definitions and legal notes to the imported watches. The subject watches at issue have an inner case, middle case, and

---

[7] Chapter 71, HTSUS, covers "Natural or Cultured Pearls, Precious Or Semiprecious Stones, Precious Metals, Metal Clad with Precious Metal, and Articles Thereof; Imitation Jewelry; Coin."

outer case that contain and protect the watch's movement. *See* Docket No. 5, USCIT Rule 73.1 Filing, Protest No. 2720-17-101443. Those parts fall within Note 1(b)'s definition of "cases" because they are the "inner and outer cases, containers and housings for movements . . . ." The inner case, middle case, and outer case are made of a gold alloy[8] that consists of 75% gold and 25% copper. *See* Ex. 1, Pl.'s Resp. to Def.'s Interrogatories, No. 14. As we established previously, gold alloy is not a precious metal for purposes of heading 9101, HTSUS. Consequently, the imported watches do not have cases wholly of precious metal. *See* Note 2.

The imported watches also have several prominent titanium screws that are visible on the front of the watch. The screws extend through the outer case, middle case, and inner case and are fastened with abrasion resistant copper-nickel-zinc washers. The screws and washers seal the watch and complete its assembly. *See* Pl.'s Shipley Declaration, ¶ 48. The screws and washers fall within Note 1(b)'s definition of "cases" because they are "parts or pieces" or "auxiliary and incidental features" that "serve to complete" the subject watches. Because titanium screws and copper-nickel-zinc washers are not made of precious metals and are covered by the term "cases," the watches cannot be classified in heading 9101, HTSUS.

The watches at issue have "case back gaskets" that provide a seal between the case back and middle case to keep water from seeping inside the watch. The case back gaskets are also "parts or pieces" or "auxiliary or incidental" features that serve to complete the subject watches. Ex. 4, Shipley Dep. Tr., 23:7-12. The case back gaskets are made of Hytrel, which is a type of plastic. *Id.* See also Shipley Dec. ¶¶ 46 and 63.

---

[8] An "alloy" is "any of a large number of substances having metallic properties and consisting of two or more elements; with few exceptions, the components are usually metallic elements." *See McGraw-Hill Dictionary of Scientific and Technical Terms* (3rd ed. 1978).

Finally, the synthetic sapphire crystal on the watch is also covered by Note 1(b)'s definition of the term "cases." The purpose of the case back is to allow the wearer to see the movement of the watch. Also, the synthetic sapphire crystal case back protects the movement from the elements (dirt, dust, and water). *See* Ex. 1, Pl.'s Resp. to Def.'s First Set of Interrogatories, No. 19; Pl.'s Shipley Declaration, ¶ 43. Accordingly, the synthetic sapphire crystal case back is a "part or piece" or "auxiliary and incidental feature" that serves to complete the watch. The presence of the synthetic sapphire case back on the watch precludes the watch from being classified in heading 9101, HTSUS. Furthermore, the gold alloy inner case, outer case, and middle case, titanium screws, case back gasket and synthetic sapphire crystal taken together does not fall under the *de minimus* exception in General Note 3(h)(v)(A).

## V.    HEADING 9101, HTSUS, DOES NOT REQUIRE THAT ONLY THE "PRINCIPAL PARTS" OF THE WATCH BE "OF PRECIOUS METAL."

We have established that the correct classification of the watches at issue can be achieved by applying the terms of headings 9101, HTSUS, the relevant legal notes, and the Explanatory Notes. Ildico, however, advances a different analysis that skips over Note 1(b) entirely. Ildico argues that heading 9101, HTSUS, only requires that the "principal parts" of the watch case be made of precious metal. Pl.'s Br. at 18-19. Specifically, Ildico argues that Note 2 instructs that the cases must be "wholly" of precious metal. Relying on General Note 3(v)(A), Ildico argues that the term "wholly of" means that the named material can also include negligible or insignificant quantities of some other material or materials. Ildico then argues that "the *de minimus* rule applies to determine whether something is insignificant" and that the "opposite of insignificant is principal." *Id*. at 19. Ildico then concludes that the focus of heading 9101, HTSUS, is on the "principal parts" of the "watch case." According to Ildico, the Notes to Chapter 91 do not define the term 'watch cases' and therefore lexicographic sources

must be consulted to ascertain the definition. *Id*. at 19-20. Ildico's classification argument is replete with fundamental analytical errors.

Ildico's argument is first flawed because it focuses on the term "watch cases" which does not appear in heading 9101, HTSUS. However, the relevant term "cases" does appear in the heading and is defined by Additional U.S. Note 1(b) to Chapter 91. The Additional U.S. Notes included within the Chapter Notes "'are legal notes that provide definitions or information on the scope of the pertinent provisions or set additional requirements for classification purposes.'" *Del Monte Corp. v. United States*, 730 F.3d 1352, 1355 (Fed. Cir. 2013). These Additional U.S. Notes are part of the legal text of the HTSUS, and are therefore "statutory provisions of law." *See* Preface at 1 n.2, HTSUS. *See also Del Monte Corp.*, 730 F.3d at 1355 (internal quotation marks omitted); *LF USA, Inc. v. United States*, 290 F. Supp. 3d 1339, 1343–44 (Ct. Int'l Trade 2017), *as amended* (Jan. 22, 2018). If Congress has clearly stated its intent in the language of the HTSUS, then the Court should not inquire further into the meaning of the statute or engage in a common-meaning inquiry because the statutory definition is controlling. *See Pillowtex Corp. v. United States,* 171 F.3d 1370, 1373 (Fed. Cir. 1999); *Sarne Handbags Corp. v. United States*, 24 Ct. Int'l Trade 309, 316 (2000). Here, the prefatory language of Additional U.S. Note 1(b), "For the purposes of this chapter," indicates that the Note applies wherever the term "cases" appears in Chapter 91, which includes heading 9101. Accordingly, the HTSUS definition of the term "cases" is controlling, and there is no need to resort to lexicographic resources to ascertain the meaning of that term.

Not only does Ildico ignore the correct application of "cases" in heading 9101, but Ildico's interpretation of heading 9101, HTSUS, is also flawed because it improperly reads out the term "cases" from the statute and replaces it with the term "principal parts." Nowhere in the

heading do the words "principal parts" appear. Congress "is presumed to say in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 (Fed. Cir. 2013). Thus, if Congress intended for only the "principal parts" of a watch to be "of precious metal," it would have done so explicitly. Given that Congress used the broadly defined term "cases" in heading 9101, HTSUS, a limitation to "principal parts" cannot be read into that provision.

Furthermore, Ildico's "principal parts" argument conflicts with Note 1(b)'s broad definition of the term "cases." The Note expressly states that the term covers "auxiliary or incidental features" that serve to complete watches of Chapter 91. The term "auxiliary" is defined as "a: offering or providing help. b: functioning in a subsidiary capacity." https://www.merriam-webster.com/dictionary/auxiliary (last visited on May 24, 2024). The term "incidental" is defined as "1a: being likely to ensue as a chance or minor consequence. 1b: Minor." https://www.merriam-webster.com/dictionary/incidental (last visited on May 24, 2024). "Minor" is defined, in relevant part, as "1: inferior in importance, size, or degree: comparatively unimportant." https://www.merriam-webster.com/dictionary/minor (last visited on May 24, 2024). Based on the dictionary definitions of the terms "auxiliary" and "incidental," the term "cases" in heading 9101, HTSUS, includes features of the watch that are subsidiary, minor, or unimportant. Thus, Ildico's "principal parts" argument is without merit.

Nevertheless, Ildico argues that the imported watches satisfy the terms of heading 9101 because the "principal parts" of the cases of the subject watches are the "front (bezel), middle case (body), and case back (bottom)" and that those parts are "of precious metal." Pl.'s Br. at 22, 33-36. Ildico argues that Note 2 to Chapter 91 establishes that the term "precious metals"

includes gold alloys.  Ildico further argues that because heading 9101 covers "metal clad with precious metal defined under Ch. 71, Note 7, as <u>base metal</u> covered in any thickness through various means," it "follows that" Note 2 "cannot require essentially 100% precious metals to make up the principal parts of the case."  *Id*. at 34.  Ildico's argument disregards the actual language of Note 2.

Ildico's interpretation of Note 2 incorrectly reads out the term "wholly of."  Courts will construe a statute in a manner that will carry out legislative intent and "give effect, if possible, to every word Congress used."  *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 339 (1979).  Note 2 provides that heading 9101, HTSUS, covers watches having cases "wholly of precious metal *or* of metal clad with precious metal . . . ." (emphasis added).  The references to "wholly of precious metal" and "metal clad with precious metal"[9] describe two different categories of goods covered by the heading and each category has different requirements.  Thus, "wholly of precious metal" describes one category of watch with a case made completely of precious metal except for negligible or insignificant quantities of some other material or materials.  Such an interpretation gives effect to the phrase "wholly of."  *See* General Note 3(h)(v)(A) (definition of "wholly of"). The watches at issue are not covered by any of the categories identified in Note 2.

---

[9] "Metal clad with metal" means "material made with a base of metal upon one or more surfaces of which there is affixed by soldering, brazing, welding, hot-rolling or similar mechanical means a covering of precious metal. Except where the context otherwise requires, the expression also covers base metal inlaid with precious metal."  *See* Note 71, Chapter 71.

VI. **THE CLASSIFICATION OF THE INDIVIDUAL COMPONENTS OF THE WATCHES IS IMMATERIAL BECAUSE THE WATCHES ARE CLASSIFIABLE IN THEIR CONDITION AS IMPORTED AS FULLY ASSEMBLED GOODS.**

It is well-settled that merchandise is to be classified based on the condition in which it is imported. *See Mita Copystar Am.*, 21 F.3d at 1082; *Plexus Corp. v. United States*, 489 F. Supp. 3d 1379, 1389 (Ct. Int'l Trade 2020). Notwithstanding the foregoing fundamental tenet, Ildico advances several arguments based on the hypothetical notion that the titanium screws, washers, and synthetic sapphire crystal case back were imported separately. Under Ildico's theory, if imported separately, those watch components would not be classifiable as parts of a watch case in heading 9111, HTSUS ("Watch cases and parts thereof"), and, therefore, they cannot be considered parts of a case for purposes of heading 9101. Pl.'s Br. at 3, 23-27. Here, the subject watches were imported as complete, fully assembled goods. The hypothetical classification of the individual components of the watches at issue is irrelevant.

A. **The Titanium Screws And Washers Are Not "Parts Of General Use."**

Despite Additional U.S. Note 1(b), Ildico argues that the titanium screws and copper-zinc-nickel washers should not be considered as parts of a case for a watch. Ildico speculates that if the screws and washers had been imported separately, they would be classified as "parts of general use" in subheading 7318, HTSUS, and not as parts of a watch case. Pl.'s Br. at 24. Under Ildico's theory, if the screws and washers are not parts of a watch case, they are not relevant to the classification of the imported watches. Ildico's "parts of general use" argument is incorrect.

Ildico's arguments pertaining to the importation of individual components of the watches is purely theoretical. The titanium screws and copper-nickel-zinc washers were not imported separately. Therefore, the tariff classification of the individual parts of the watch, including the

titanium screws and washers, has no bearing on the classification of the subject watches in their condition as imported.  The only fact that is relevant to classification under heading 9101, HTSUS, is the constituent material of the screws and washers as they must be "wholly of precious metal" to be classified under heading 9101.  *See* Note 2.  As Ildico concedes "titanium, stainless steel, copper, nickel, and zinc are base metals," (Pl.'s Br. at 24) and not precious metals. Given that the titanium screws and washers do not satisfy the "wholly of precious metal" requirement and are embraced by the term "cases" of Note 1(b), the imported watches cannot fall within heading 9101, HTSUS.

**B.**    **Even If The Synthetic Sapphire Crystal Case Back Is Considered "Watch Glass," The Case Back Is Still Covered By Note 1(b)'s Definition Of The Term "Cases."**

In an effort to avoid the fact that the synthetic sapphire crystal case back is covered by Note 1(b)'s definition of "cases," Ildico unconvincingly argues that the synthetic sapphire crystal is considered to be "watch glass" and thus is not part of a watch case.  Pl.'s Br. at 25.  Ildico first argues that Chapter 91, Note 1(a) explains that "watch glasses" are precluded from classification in Chapter 91 and, instead, classified according to their constituent material.  *Id*.  Ildico further argues that the Explanatory Notes to headings 9111 and 9114, HTSUS, explain that watch glasses are not parts of watch "cases" and are not classified as parts of watches.  *Id*.  Ildico argues that the term "watch glass" is synonymous with the term "watch crystal."  *Id*. at 25-26. According to Ildico, if "watch glasses" are not classifiable in heading in Chapter 91, then "watch crystals" are also not classifiable in that chapter and are not parts of the cases of the imported watches.

As we previously established, merchandise is classified in its condition as imported.  It is undisputed that the synthetic crystal case back is not imported separately, and the determination

24

of whether the case back is considered "watch glass" that is not classifiable in Chapter 91 is immaterial. Because the subject watches are imported as fully assembled and complete, Note 1(b) applies and the definition of "cases" encompasses the synthetic sapphire crystal case back, demonstrating that the watches do not fall within heading 9101.

Ildico also argues that lexicographic sources establish that a watch can have a "crystal" on the front and back, and that watch crystal is synonymous with watch glass. Pl.'s Br. at 28-32. Because Chapter Note 1(a) precludes watch glasses from classification in heading 9111, HTSUS, watch glasses and watch crystals "are not part of the case" and are classified according to their constituent material. *Id.* Therefore, in Ildico's view, the crystals, if independently imported, should not be considered when deciding whether the cases of the imported watches are wholly of precious metal. Ildico's argument fails given that the synthetic sapphire crystal on the back of the watches is not imported separately and Note 1(b) governs.

## VII.   THE TRIAL COURT IS NOT BOUND BY CBP'S ADMINISTRATIVE CLASSIFICATION RULINGS.

In a civil action brought pursuant to 19 U.S.C. § 1515 contesting the denial of an administrative protest filed in accordance with 19 U.S.C. § 1514(a), a party invokes the jurisdiction of the Court under 28 U.S.C. § 1581(a). Under 28 U.S.C. § 1581(a), the trial court reviews CBP's classification determination *de novo* based on the pleadings and record before it. *See* 28 U.S.C. § 2640(a)(1). Accordingly, Customs rulings are not dispositive in a classification dispute such as this, brought under section 1581(a).

Ildico argues that ruling NY N268252 (Sept. 25, 2015), which involved the classification of a wrist watch from Switzerland, is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Pl.'s Br. at 37. Although CBP's rulings are relevant insofar as they have to the "power to persuade" (*United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)), they are not

binding on the Court (*see MetChem, Inc. v. United States*, 513 F.3d 1342, 1345 (Fed. Cir. 2008)), and rulings are not entitled to deference when they do not pertain to the merchandise under consideration. *Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1331 (Ct. Int'l Trade 2013). Here, ruling NY N268252 involves merchandise that is different from the merchandise at issue in this case. Therefore, the ruling is not material to the Court's classification determination.

Ildico also seeks to challenge CBP's determination in HQ H285165 (Nov. 14, 2017) that the synthetic sapphire crystal on model RM011 (MON-00007) is not a "watch crystal." Pl.'s Br. at 26-28. As explained, this Court is not bound by CBP's classification rulings in this *de novo* action. Even so, CBP's determination in HQ285165 was correct and consistent with the rationale advanced here. In the ruling, CBP first determined that sapphire crystal is not a precious metal. Because sapphire is not a precious metal, the watches did not have a case of precious metal or of metal clad with precious metal. As such, the subject merchandise did not fall within the plain meaning of heading 9101, HTSUS.

In the ruling, Ildico argued that the watches satisfy Note 2 to heading 9101 because the case is of precious metal combined with "precious or semiprecious stones (natural, synthetic or reconstructed) of headings 7101 to 7104." CBP determined that the case was not of precious metal combined with precious or semiprecious stones of headings 7101 to 7104 because "[t]he reference to precious and semiprecious stones of headings 7101 to 7104 refers to watches that are embellished with pearls or jewels of headings 7101 to 7104 for purposes of ornamentation." Here, the same reasoning applies. The sapphire crystal is mounted into the case – it is used because it is extremely hard and scratch resistant. It is not used for ornamentation. Moreover,

26

the subject merchandise has a sapphire case back, not sapphire stones.  HQ H285165 is correct and Ildico's reliance on this ruling is unavailing.

## VIII.   THE WATCHES AT ISSUE ARE PROPERLY CLASSIFIABLE IN HEADING 9102, HTSUS.

Heading 9102, HTSUS, covers "[w]rist watches, pocket watches and other watches, including stop watches, other than those of heading 9101."  We have established that the watches at issue cannot be classified in heading 9101, HTSUS.  Therefore, they are properly classifiable in heading 9102, HTSUS.  Accordingly, the Government's cross-motion for summary judgment should be granted.

## <u>CONCLUSION</u>

For these reasons, the Court should grant the Government's cross-motion for summary judgment, find that the merchandise at issue is classifiable in subheading 9102.21.70, HTSUS, deny Ildico's motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

<div style="margin-left: 40%;">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

</div>

27

/s/ Marcella Powell
MARCELLA POWELL
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-1873
Attorneys for Defendant

DATED:  May 30, 2024