**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE**

| | | |
|---|---|---|
| **ILDICO INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **Consolidated** |
| | : | **Court Nos.   18-00136** |
| **v.** | : | **18-00076** |
| | : | |
| **UNITED STATES,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

**Dated: July 12, 2024**

**Stein Shostak Shostak Pollack & O'Hara LLP**
**Mandy Edwards Kirschner, Esq.**
**865 South Figueroa Street, Suite 1388**
**Los Angeles, California 90017**
**Telephone Number: (213) 630-8888**
**Fax Number: (213) 630-8890**
**E-Mail:** mkirschner@steinshostak.com
**Attorney for Plaintiff**

### TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. iii

I.    **INTRODUCTION** ....................................................................................................1

II.   **ARGUMENT** ............................................................................................................2

      A.  **TO DISTRACT FROM THE LEGAL ISSUE, THE GOVERNMENT
          IGNORES THE DETAILED DESCRIPTIONS OF THE WATCHES
          PRESENTED IN THE RECORD AND FOCUSES ON MAKING
          IRRELEVANT CLAIMS AND MISCHARACTERIZING EVIDENCE**........2

          1.  **The Government's Claim that It Needed to Inspect the Richard
             Mille Watches' Serial Numbers to Confirm Importation to the
             United States is a Red Herring**.......................................................3

          2.  **The Government's Discovery Disputes, Which It Raises for the
             First Time, Are Not Proper and Are Irrelevant**...........................4

          3.  **Either the Government Ignores or Mischaracterizes the Evidence
             In the Record.**...................................................................................6

               a.  **The Government Ignores Ildico's Declarations**.............................6

               b.  **The Images of the Front of the Watches Cover the
                   35 Styles of Watches in this Case** .....................................................8

               c.  **The Technical Specifications Provide the Watch
                   Characteristics The Government Claims It Cannot Verify** ...........9

      B.  **THE GOVERNMENT'S LEGAL ARGUMENTS ARE NOT
          SUPPORTED BY THE STATUTORY STRUCTURE OR THE
          LEGISLATIVE HISTORY AND PRODUCE IRRATIONAL
          RESULTS** ......................................................................................12

i

## **TABLE OF CONTENTS (Cont'd.)**

**PAGE**

    **1.** **The Government's Interpretation of Additional US Note 1(b) Produces Absurd Results and Creates Different Definitions For Parts of Watch Cases**............................................................................12

    **2.** **The Legislative History for Additional US Note 1(b) Shows It Was Designed to Create Uniformity Whether Watch Cases Are Imported as a Whole or as Separate Parts**...........................15

    **3.** **The Government's Flawed Interpretation of AN1(b) Nullifies the Term "Wholly of" from Chapter 91 Legal Note 2**....................................18

    **4.** **The Government's Interpretation of Legal Note 2 Produces Irrational Results**.......................................................................19

**III.**   **CONCLUSION**.......................................................................................21


**CERTIFICATE OF COMPLIANCE**

ii

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE**

*Am. Exp. Co. v. United States*,
    61 Cust. Ct. 208, C.D. 3573, 290 F. Supp. 778 (1968)
    *Aff'd*, 426 F.2d 383 (1970) .................................................................................... 15

*Am. Rusch Corp. v. United States*,
    74 Cust. Ct. 153, C.D. 4598
    394 F. Supp. 1402 (1975) ..................................................................................... 15

*Ben-Kotel v. Howard Univ.*,
    156 F. Supp 2d 8 (D.D.C. 2001)
    *Aff'd,* 319 F.3d 532 (D.C. Cir. 2003) .................................................................... 5

*Brisbon v. Tischner*,
    639 F. Supp 3d. 164 (D.D.C. 2022)
    *Aff'd,* No. 23-5007, 2023 WL5162363 (D.C. Cir. Aug. 9, 2023)............................ 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................ 2, 3

*Corley v. United States*,
    556 U.S. 303, 129 S.Ct. 1558,
    173 L. Ed. 2d 443 (2009) ..................................................................................... 18

*Deckers Outdoor Corp. v. United States*,
    714 F.3d 1363 (Fed. Cir. 2013) ............................................................................ 18

*Ford Motor Co. v. United States,*
    926 F.3d 741 (Fed. Cir. 2019)................................................................................. 4

*Garza-Flores v. Mayorkas*,
    38 F.4th 440 (5th Cir. 2022) ................................................................................ 6

*G.G. Marck & Assocs., Inc. v. United Sates*,
    No. 08-00306, 2015 WL 3757040 (CIT June 17, 2015) ...................................... 15

*LB Watson, Co. v. United States*,
    79 Cust. Ct. 85, C.D. 4717 (1971) ......................................................................... 3

**TABLE OF AUTHORITIES (Continued)**

**PAGE**

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371, 133 S.Ct. 1166
  185 L. Ed. 2d 242 (2013) ...................................................................................................18

*Matter of Green*,
  968 F.3d 516 (5th Cir. 2020) ..............................................................................................7

*ME Glob., Inc. v. United States*,
  633 F. Supp 3d. 1349 (Ct. Int'l. Trade 2023) .......................................................18

*Nippon Kogaku (USA), Inc. v. United States*,
  69 CCPA 89, 673 F.2d 380 (1982) .................................................................15

*Sparks Belting Co. v. United States*,
  34 Ct. Int'l Trade 662, 715 F. Supp 2d. 1305 (2010)
  *Aff'd.* 416 F. Appx. 906 (Fed. Cir. 2011) .....................................................3, 4, 6

*Strong v. Valdez Fine Foods*,
  724 F.3d 1042 (9th Cir. 2013) ...........................................................................6

*Univ. Elecs. Inc. v. United States*,
  112 F.3d 488 (Fed. Cir. 1997) ...........................................................................11

**STATUTES**

Tariff Act of 1930 ......................................................................................... 15, 16, 17

**U.S. CUSTOMS AND BORDER PROTECTION**

Customs Ruling HQ H285165 (Nov. 14, 2017) ........................................................11

## TABLE OF AUTHORITIES (Continued)

**PAGE**

## HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES

Chapter 71 ....................................................................................................................20

Chapter 91, Heading 9101 ....................................................................................*passim*

Chapter 91, Heading 9111 .............................................................................. 14, 17

Chapter 91, Heading 9114 .......................................................................... 13, 14, 17

Chapter 91, Additional Notes 1 (b) ......................................................................*passim*

General Note 3 ................................................................................................ 2, 19, 20

## COURT RULES

Fed. R. Civ. P. 56 .............................................................................................................6

U.S.C.I.T. Rule 26................................................................................................................4

U.S.C.I.T. Rule 56................................................................................................................5

U.S.C.I.T. Rule 73................................................................................................................4, 9

## OTHER

McCormick on Evidence (Kenneth S. Broun, ed., 7th ed. Rev. 2013)...........................................6

Tariff Classification Study (Nov. 15, 1960) ................................................................... 15, 16, 17

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Ildico, Inc. submits this Memorandum in Opposition to the Cross-Motion for Summary Judgment filed by the Defendant, the United States ("the Government") and in reply to the Government's Opposition to Plaintiff's Motion for Summary Judgment.

## I.    INTRODUCTION

To avoid the legal issue in this case, the Government takes the extreme position that it is entitled to a judgment as a matter of law because, allegedly, Ildico cannot prove the characteristics of the Richard Mille watches. The Government justifies its position because it did not get to inspect each and every watch's serial number to confirm their importation. However, these unique identifiers provide no information about the watches' features relevant in a classification case. The Government attempts to create doubt and distract the Court by pointing to hypothetical evidence not in the record while at the same time ignoring the evidence actually in the record. It simply dismisses Ildico's two declarations which thoroughly detail the nature, characteristics and features of the imported watches. These comprehensive declarations total almost 30 pages. One is submitted by Ildico's watchmaker who inspects and repairs the Richard Mille watches. Further, the Government distorts Ildico's corroborating evidence which provides the very information the Government claims it needs to verify.  Despite this smokescreen, the Court should grant Ildico's Motion for Summary Judgment.

Additionally, the Government claims it is entitled to a judgment as a matter of law because under its interpretation of Additional US Note 1(b) (AN1(b)), essentially *none* of the parts of the Richard Mille watches would meet the requirements for classification under Heading 9101. This leads to the absurd result that parts of general use and transparent watch crystals must be of

1

precious metal even though these parts are separately classified in the tariff. The Government's interpretation creates different definitions for parts of watch cases depending on whether parts are imported separately or as part of a watch. However, the legislative history shows that AN1(b) is intended to be read along with other tariff provisions to provide uniform treatment for these parts.

Finally, the Government's interpretation of "wholly of" from Chapter 91 Legal Note 2 to only apply to watch cases of "precious metal" and not to cases of "metal clad with precious metal" is irrational. First, this means the *de minimis rule* from General Note 3(h)(v)(A) does not apply to any insignificant parts of cases that are of metal clad with precious metal. Second, because the Government interprets "wholly of" to mean that "precious metal" cannot include alloys, even the bezels, centers and backs of watch cases must be, *e.g.,* 24 karat (100%) gold. This would create a higher standard for cases of precious metal than of *metal* clad [*covered in any thickness*] with precious metal cases. It would also void all Swiss made watches from classification under Heading 9101 because the standard for Swiss watch cases is 18k gold. By contrast, Ildico reads AN1(b) logically along with the other Chapter 91 tariff provisions, the legislative history and the World Customs Organization Explanatory Notes (ENs). Accordingly, Ildico respectfully requests that its Motion for Summary Judgment be granted and the Defendant's Cross-Motion be denied.

## II.   ARGUMENT

### A.   TO DISTRACT FROM THE LEGAL ISSUE, THE GOVERNMENT IGNORES THE DETAILED DESCRIPTIONS OF THE WATCHES PRESENTED IN THE RECORD AND FOCUSES ON MAKING IRRELEVANT CLAIMS AND MISCHARACTERIZING EVIDENCE.

Initially, the Government argues it is entitled to a judgment as a matter of law because Ildico allegedly fails to establish the "nature, characteristics and features of the watches that are relevant to their classification." Def.'s Br. at 5, 9. In support, the Government quotes *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 323 (1986), which states, "a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Def.'s Br. at 8.

The Government's justifications for its extreme position are a distraction. The Government's hollow evidentiary arguments show that Ildico provided the very information the Government claims it could not verify and Ildico established the watches' characteristics.

### 1. The Government's Claim that It Needed to Inspect the Richard Mille Watches' Serial Numbers to Confirm Importation to the United States Is a Red Herring.

The Government claims it needed to inspect all 35 styles of Richard Mille watches to confirm "the watches identified on the invoices by *serial numbers* were actually imported into the United States." Def.'s Br. at 4 (emphasis added); *see also*, Def.'s Br. at 12 (stating "Ildico also has not provided documentation that would establish that the articles listed on the commercial invoices were actually imported."). This is a red herring.

First, the individual serial number is *unique to each watch*. Declaration of Michelle Shipley at ¶64. As such, confirming the serial numbers against the commercial invoices would require inspection of *more than* just the 35 watch styles. It would require inspection of every watch in the litigation! This is impossible and baseless. The Government admits that the CIT case on which it relies explains that the production of samples is not required in a classification case to establish the goods' characteristics. *See* Def.'s Br. at 12 (citing *Sparks Belting Co. v. United States*, 34 Ct. Int'l Trade 662, 670, 715 F. Supp. 2d 1305, 1314 (2010), *aff'd*, 416 F. Appx. 906 (Fed. Cir. 2011)); *see also L.B. Watson, Co. v. United States*, 79 Cust. Ct. 85, 87, C.D. 4717 (1971). Thus, samples from the *actual imported* shipments are not required for inspection either. *See Sparks*, 715 F.

Supp.2d at 1314.[1] Here, the Government admits this litigation, "is a simple, straight forward classification case." Def.'s Br. at 5. There is no admissibility question.[2] Second, the serial number does not show any information about the physical characteristics of the watches, which is what the Government claims is lacking. *See* attached Supplemental Declaration of Michelle Shipley at ¶5. The Government ignores that the watches are identified on the commercial invoices by model number, style number and description. *Compare* Docket No. 5, USCIT R. 73.1 (Commercial Invoices) *with* Def.'s Br. at 5 (stating "The commercial invoices . . . contain limited information including the serial number for each watch, type of movement, white gold or red gold, and an indication as to whether the bezel is set with gemstones."); *see also* Declaration of Anton Rubianto at ¶45.

### 2.    The Government's Discovery Disputes, Which It Raises for the First Time, Are Not Proper and Are Irrelevant.

It is telling that instead of pointing to the evidentiary record as its basis that Ildico did not establish sufficient evidence, the Government focuses on its own production requests, to which Ildico timely objected under USCIT R. 26(b). *See* Def.'s Br. at 4 (citing Def's Ex. 1 & 2 (Pl.'s responses to RFPs)).  The Government never challenged these responses with the Court.

---

[1] The Government cites *Ford Motor Co. v. United States*, 926 F.3d 741, 752 (Fed. Cir. 2019) for the idea that the "imported article itself" should be examined in its condition as imported. Def. Br. at 12. In *Ford*, the Federal Circuit determined the CIT's consideration of *post-importation* processing was appropriate rather than limiting evaluation to the merchandise's "condition as imported." 926 F.3d at 752-53. Emphasis added. This was because the *eo nomine* provision involved "one of the very limited circumstances" where it "inherently suggests looking to intended use." *Id.* at 753. Here, there is no dispute the goods are wrist watches. Def.'s Br. at 14. The Government's purported need to examine the actual imported watches is to review their serial numbers which provide no information relevant to classification. *See id.* at 4,12; attached Supplemental Declaration of Michelle Shipley at ¶5.

[2] Moreover, Anton Rubianto attests that when the imported watches are delivered to Ildico, he compares them with the commercial invoice to confirm the delivery corresponds with the order. Attached Supplemental Declaration of Anton Rubianto at ¶3.

Although USCIT R. 56(c)(2) includes objections related to admissibility, it does not provide for objections related to discovery disputes. If a nonmovant does not think it has the evidence necessary to oppose a motion for summary judgment (MSJ), it can submit a declaration to the court and ask for more time for additional discovery. USCIT R. 56(d). The Government did not.

Instead, to distract from the evidence on record, the Government now raises discovery disputes in its opposition to Ildico's MSJ. Opposing a MSJ based on a discovery dispute is not proper. *Brisbon v. Tischner*, 639 F. Supp. 3d 164, 178 (D.D.C. 2022), *aff'd*, No. 23-5007, 2023 WL 5162363 (D.C. Cir. Aug. 9, 2023); *Ben-Kotel v. Howard Univ.*, 156 F. Supp. 2d 8, 15 (D.D.C. 2001) ("This discovery-dispute argument . . . is not appropriate in an opposition to summary judgment."), *aff'd*, 319 F.3d 532 (D.C. Cir. 2003). In *Brisbon*, the court explained the appropriate time to raise a dispute over the respondent's nonproduction of documents was prior to the close of discovery. 639 F. Supp. 3d at 178-79.

Here, if the Government did not think Ildico's production responses and objections were proper, it could have conferred with Ildico, and, if dissatisfied, then filed a motion to compel. It did not. Instead, the Government now complains that it did not get to inspect all 35 styles of "highly specialized" watches covered by the entries in this case even though it agreed to a limited inspection where Ildico produced three representative samples, RM07-01 (MON-00176), RM037 (MON-00229) and RM010 (MON-00078). *See* Def.'s Br. at 4; Def.'s Ex. 1 (Pl.'s Response to Def.'s 1st RFP No. 3) (providing Ildico's proposed inspection of limited samples); Supp. Rubianto Dec. at ¶¶4-5 (providing inspected watch styles and inspection date); Supp. Shipley Dec. at ¶¶4-6 (explaining the three inspected watches are representative of the 35 styles) and Shipley Dec. at ¶62, Pl.'s Ex. 4 (providing photographs of the inspected watches).

### 3. Either the Government Ignores or Mischaracterizes the Evidence in the Record.

#### a. The Government Ignores Ildico's Declarations.

The Government relies on the *Sparks* case as an example of when the importer could not establish the characteristics of the goods. *See* Def.'s Br. at 11-12. However, in *Sparks*, due to a previous court ruling, the nonmoving party *could not use* parts of the sworn affidavit it submitted to establish the goods' characteristics. 715 F. Supp. 2d at 1315. Here, the Government ignores the two comprehensive, detailed declarations, totaling 28 pages, Ildico submitted with its MSJ, which set forth the relevant characteristics, features and materials of each of the 35 styles of watches. They also include corroborating documents.

The Government casually dismisses the declarations because the declarants do not "indicate that they have seen or examined the *actual* 35 styles of watches at issue in this action, which are identified by *serial number* on the commercial invoices." Def.'s Br. at 12. Emphasis added. Again, there is no explanation why examination of watches with the same serial number as the commercial invoice is required.[3]  *See id.*

Further, under FRCP 56(c)(4), courts have held that there is a low threshold for personal knowledge, especially at summary judgment. *See e.g., Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013). "If 'reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible.'" *Id.* (quoting 1 McCormick on Evidence § 10 (Kenneth S. Broun, ed., 7th ed. rev. 2013)). Personal knowledge can be "reasonably inferred from the circumstances—such as the affiant's identity and relationship to the relevant subject matter." *See e.g., Garza-Flores v. Mayorkas*, 38 F. 4th 440, 445 (5th Cir. 2022) (internal

---

[3] Mr. Rubianto attests that he reviews the watches when they are delivered to Ildico to compare them with the commercial invoice to ensure it is consistent with the order. Supp. Rubianto Dec. at ¶3.

quotation omitted).  This includes if it is "reasonably within the person's sphere of responsibility, particularly as a corporate officer." *Matter of Green*, 968 F.3d 516, 524 (5th Cir. 2020) (internal quotation omitted).

Here, both declarants attest that their detailed statements regarding the 35 styles of watches are made from personal knowledge and that they are familiar with both the watch models and their corresponding 35 watch styles covered by this litigation.  Rubianto Dec. at ¶¶1, 15; Supp. Rubianto Dec. at ¶¶1-2; Shipley Dec. at Preamble, ¶¶6-9; Supp. Shipley Dec. at ¶¶1-2.[4] The Government ignores the declaration submitted by the Commercial Director of Ildico, the company's first employee, who started almost 20 years ago.  Rubianto Dec. at ¶¶2-3. It also ignores the declaration submitted by Ildico's watchmaker of over 10 years, Michelle Shipley, who receives up-to-date training, including at the Richard Mille factory in Switzerland, so that she can repair the Richard Mille watches, which includes disassembling and reassembling them. Shipley Dec. at ¶¶1-2 & 5. Moreover, Ms. Shipley states that she recently repaired watch models, RM010, RM011, RM037, RM07-01, and RM67-01. *Id at* ¶10. These models account for 25 of the 35 styles of watches in this case.  *See* Pl.'s Ex. 1. Moreover, she has examined all the watch models in the litigation. Supp. Shipley Dec. at ¶3.

From her experience, Ms. Shipley provides detailed statements about how the watches are assembled and constructed. She explains the features of the 18-karat gold bezel, middle case and case back (whether of red or white gold and with or without gemstones) found on each watch and how these parts are assembled along with the parts of the dial and the movement, as well as the transparent (front and back) synthetic sapphire crystals, titanium screws and base metal washers.

---

[4] The Government does not dispute Pl.'s Ex. 1 includes the correct 35 watch styles in this litigation.

*Id.* at ¶¶13-22, 24, 28-53, 56-59. She also explains how the various plastic and rubber gaskets (and in some cases, a stainless steel sealing flange) are used to seal the watch case. *Id.* at ¶¶38-39, 46, 65. Also, she details the purpose, function and materials of any crowns or pushers found on the watches. *Id.* at ¶¶60-61. Finally, she explains that the exploded diagrams submitted with Pl.'s Ex. 6 are representative of the parts found in the watches in the litigation. *Id.* at ¶¶64-65. Although the Government tries to create doubt, the declarants thoroughly describe the relevant parts, features and materials of the watches.

### b. The Images of the Front of the Watches Cover the 35 Styles of Watches in this Case.

The Government mischaracterizes the evidence to which it actually points to in the record. It argues that the stock images "of the fronts of *models* of watches" (Def.'s Br. at 4) (emphasis added)) submitted by Ildico are "insufficient" (*id.* at 9).  However, the 35 images are not of watch *models*, but of the 35 specific *styles* of watches (with associated MON Nos.) covered by the entries in this case. Rubianto Dec. at ¶¶16, 23; Pl.'s Ex. 1 & 2; Commercial Invoices (providing the Mon Nos.)).[5]

Instead, these images confirm certain characteristics and features of the front of the watches. They show that each watch has a transparent piece of material on the front (*i.e.*, the front sapphire crystal), they show whether the bezel and middle case are red or white [gold] (and whether they are set with gemstones (*e.g.*, diamonds)) and they show part of the strap. Pl.'s Ex. 2. The images also show the crown and any pushers, the style of the dial, and they show that part of the movement can be seen through the front of the watch. *Id.*

---

[5] For explanation of the watch models and associated watch styles see Pl.'s Br. at 5, n. 1, Rubianto Dec. ¶¶22-23; Shipley Dec. at ¶¶7-8.

### c.  The Technical Specifications Provide the Watch Characteristics the Government Claims It Cannot Verify.

The Government claims that Ildico "produced *generic* specifications for *some of the models*, not styles [of watches], that are at issue and for *models that are not at issue*." Def.'s Br. at 4[6]; *see also* Def.'s Br. at 12. Emphasis added. This is untrue and misleading. Ildico submitted specifications for 9 out of the 10 models of watches that cover 33 styles of watches in this case. Pl.'s Br. at 5, Rubiano Dec. at ¶20; Pl.'s Ex. 1 & 3 (providing technical specifications for all but the RM57-01 model); Commercial Invoices. It is untrue that Ildico submitted technical specifications for *models* not at issue in this case.

Because the tenth model, RM57-01 (which covers two watch styles in this case, MON-00005 and MON-00193 (Pl.'s Ex. 1 at p. 017)), was a limited edition, Richard Mille did not create a specification sheet for this model. Rubiano Dec. at ¶47. Mr. Rubiano and Ms. Shipley attest that these two watches have the same relevant characteristics as the other watches in this case. *See, e.g.*, Rubiano Dec. at ¶¶ 24-27, 29, 39, 47-48, Shipley Dec. at ¶¶7, 20, 22, 28, 33, 42, 65.[7] The two RM57-01 watches have a more complicated tourbillon movement and a specialized gold dial that made them more expensive. Rubiano Dec. at ¶47; Shipley Dec. at ¶11. However, the Government does not argue that the dial or movement make up the watch case. *See generally* Def.'s Br.

The Government overlooks characteristics and features of the watches provided by the technical specifications that it claims it needed to verify. First, the Government argues it needed to

---

[6]  The Government cites Pl.'s Br. at 6, n. 4.  There is no note 4 on page 6 of Ildico's brief.

[7] The watch declaration for (RM57-01) MON-00005 is included with Protest No. 2720-17-101443. Docket No. 5, USCIT R. 73.1.

inspect all 35 watch styles to confirm the number of jewels in the movement, as well as the size of the movement. Def.'s Br. at 4, 13. However, the technical specifications provide this information under the category "Other Features" for each model. *See* Pl.'s Ex. 3.[8] The specifications do not provide style options for the number of jewels and the size of the movement. *See id.* This is different than the case material. *See, e.g.*, Ex. 3 at ILD000182 ("The RM 07-01 [case] is available in TPZ-Z brown ceramic, in ATZ white ceramic and in white or red gold."). This is because each watch model offers more than one style case material, *e.g.*, 18k red gold, 18k white gold (with or without setting with gemstones) and ceramic, etc. Rubianto Dec. at ¶¶22-23; Shipley Dec. at ¶¶7-8.[9] As such, the number of jewels and the size of the movement *are the same for any style of watch* of the same model.

Additionally, the Government fails to acknowledge that the number of jewels is only relevant at the tariff subheading level. Mr. Rubianto confirmed that each watch in the litigation has over 17 jewels in the movement which is relevant to the subheadings Ildico claims. Dec. at ¶25; *see also* Pl.'s Ex. 3 citations at n. 8 (providing that each of the 9 models have over 17 jewels in the movement). Here, it is unclear why the size of the movement is relevant or material. Def.'s Br. at 4. Chapter 91, US Additional Note 1(a) HTSUS (citing Ch. 91, n. 3) explains that timepieces designed to be worn or carried on the person (unless they have a stand) are "watches" regardless of size of the movement. Further, the Government admits that "the parties do not dispute that the

---

[8] Specifically, "Other Features" is found for model RM010 at Bates-stamped ILD000162, RM011 at ILD000167, RM023 at ILD000172, RM029 at ILD000176, RM037 at ILD000189, RM07-01 at ILD000182, RM51-02 at ILD000197, RM19-02 at ILD000210 and RM67-01 at ILD000203.

[9] The declarants confirm that each style watch in the litigation has a watch case (bezel, middle and case back) composed of 18k red or white gold. Rubianto Dec. at ¶¶22, 29, 31; Shipley Dec. at ¶¶7, 14, 22, 28-29. The commercial invoices confirm the case material. Rubianto Dec. at ¶¶31, 45; Commercial Invoices.

goods at issue in this action are 'wrist watches.'"  Def.'s Br. at 14; *see also* Def.'s Response to Pl.'s

Statement of Uncontested Material Facts at ¶¶11-21 and Def.'s Statement of Material Facts Not in

Dispute at ¶2.  The Government points to irrelevant and uncontested information.

Remarkably, the Government claims that it could not confirm "the presence" of a

"verifiably" synthetic sapphire crystal located on the backside of each watch. Def.'s Br. at 4, *see*

*also* Def.'s n. 6. This is *incredible* since the issue in this litigation is whether the back sapphire is

part of the watch case. This is the central issue in HQ H285165, which led to this litigation,[10] and

that ruling involves one of the Richard Mille watches in this case.[11]  Ruling at 1, 6.  Further, Ildico

admits one is fitted to the case back of each watch in this litigation! Rubianto Dec. at ¶¶39, 41,

Shipley Dec. at ¶¶42, 45.

The models' technical specifications confirm the presence of a synthetic sapphire crystal is

on *both* the front and back of the watches. Pl.'s Ex. 3 (under the category "Crystal").[12] Like the

number of jewels, the specifications do not provide style options for the crystals. *See id.* Thus,

---

[10] After a Customs audit, the back sapphire is what led Ildico to file its protest subject of this ruling. Rubianto Dec. at ¶18.

[11] The Government argues that US Customs is entitled to a statutory presumption of correctness as to the "factual components of a classification decision." *See* Def.'s Br. at 7 (citing *Univ. Elecs. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997)). Yet, it claims that Ildico did not establish the characteristics of *any* of the watches in this case (*id.* at 9), including the watches it inspected (MON-00176, MON-00229 & MON-00078). Pl.'s Ex. 4. at ILD000335-338, 343-344; Shipley Dec. at ¶62. This also includes the Richard Mille watch subject to HQ H285165, style RM011 (MON-00007), which is included in this litigation. Pl.'s Ex. 1; Shipley Dec. at ¶62, Pl.'s Ex. 4 at ILD000347-48. Customs made factual determinations in that ruling that the Government now appears unable to make, namely, whether there was a piece of synthetic sapphire attached to the back of the watch. Ruling at 1; Def.'s Br. at 4.

[12] "Crystal" is found for model RM010 at Bates-stamped ILD000161, RM011 at ILD000167, RM023 at ILD000171, RM029 at ILD000178, RM037 at ILD000191, RM07-01 at ILD000184, RM51-02 at ILD000199, RM19-02 at ILD000212 and RM67-01at ILD000205.

there is a crystal on the back and front of the watches regardless of the watch style. *Id.*; *see also*, Rubianto Dec. at ¶¶39, 41. Further, the specifications' watch graphics and photographs show, the back crystal's location and that it is transparent (so that one can see the movement), regardless of whether the photograph displays a watch style with a case material other than gold. Pl.'s Ex. 3, Rubianto Dec. at ¶¶38, 42.[13]

**B.    THE GOVERNMENT'S LEGAL ARGUMENTS ARE NOT SUPPORTED BY THE STATUTORY STRUCTURE OR THE LEGISLATIVE HISTORY AND PRODUCE IRRATIONAL RESULTS.**

The Government states that the, "HTSUS provides the statutory framework necessary to classify the watches at issue." Def.'s Br. at 17. However, the Government's *own* analysis ignores the statutory framework as a whole. Unlike what the Government claims, Ildico does not "skip" AN1(b) (*id.* at 19), but rather, it reads AN1(b) *along with* the Ch. 91 Notes (including but not limited to Note 2) and pertinent Ch. 91 tariff headings in a way that is logical and which comports with the legislative history of AN1(b) and the World Customs Organization Explanatory Notes (ENs).

**1.    The Government's Interpretation of Additional US Note 1(b) Produces Absurd Results and Creates Different Definitions for Parts of Watch Cases.**

While the Government insists that the definition of watch cases under AN1(b) is "unambiguous and broad," without limitation, (*see* Def.'s Br. at 15) AN1(b) when read in a vacuum

---

[13] The Government points to the Rubianto transcript to claim the specifications show *models* not in the litigation. Def's Br. at 4 (citing Def.'s Ex. 3 Rubianto Dep. Tr. at 55:15-25). This is not true. Mr. Rubianto explains that there are different "variations," *i.e.*, *styles* of watches with case materials other than 18k gold (*i.e.* ceramic) depicted in the specification photographs than are covered by the litigation. Def.'s Ex. 3 at 55:15-25, Rubianto Dec. at ¶¶22-23, 38; *see also* Shipley Dec. at ¶¶7-8.

produces illogical results. First, the Government argues if something is a "part or piece" which "serves to complete" a watch, then it is *per se* part of a watch case. *See, e.g.*, Def.'s Br. at 18, 19. If true, then certainly a watch dial and its parts constitute "parts or pieces" included in the definition of "cases" under AN1(b). Yet, despite Ildico's argument that the dial is not part of the watch case because it is considered a separate part under Heading 9114 and its ENs,[14] (Pl.'s Br. at 20) the Government is silent why this part is not included under AN1(b).

Second, the Government's flawed interpretation of AN1(b) must include the indispensable part or piece included on every wrist watch – the front watch crystal (*i.e.*, glass). The Government's brief is devoid of *any mention* of the transparent synthetic sapphire *watch crystal* found on the *front* of the watches. At the same time, the Government argues under AN1(b), the synthetic sapphire found on the *back* of the watches *is* part of the "case," whether it is considered: 1) part of the case back (Def.'s Br. at 19) or 2) as Ildico also argues, a separate watch crystal (*id.* at 24-25).

The Government cannot have it both ways. If AN1(b) is clear and broad, without limitation, then the front crystal is included in the definition of "cases." It cannot be left out of the definition to serve the Government's purposes. Under the Government's strict interpretation of AN1(b), and in conjunction with Ch. 91, n. 2 (requiring cases wholly of precious metal) the front crystal would be opaque.[15] This is untenable since a watch crystal must be transparent for the watch user to tell the time!

Not only does the Government's interpretation require suspending reality to have watch crystals of metal, but its interpretation of AN1(b) *ignores* Ch. 91 n. 1(a) and the ENs to heading

---

[14] *See also* Pl.'s Br. at 20 (citing General EN to Ch. 91).

[15] Even assuming, unlike the Government argues, that "precious metal" includes alloys, this interpretation is unworkable.

9111 (parts of watches) and 9114 (other parts of watches) which *exclude* watch glasses as parts of watches. *See* Def.'s Br. at 24-25. The Government claims these provisions only apply for parts that are *separately imported*. *Id.* at 23, 24-25. As such, the Government's interpretation of AN1(b) creates two definitions of parts of cases, one that applies to complete watches and one that applies to parts of cases imported separately. *Id.* at 23, 25; *see also* Pl. Br. at 31-32.

The Government's interpretation of AN1(b) to include parts of general use, namely, the screws and washers found on the Richard Mille watches, also produces illogical results. *See* Def.'s Br. at 23-24. The Government argues that the screws and washers are "'parts or pieces' or 'auxiliary and incidental features' that 'serve to complete' the subject watches." *Id.* at 18. Under the Government's strict interpretation, the only thing that is "relevant" for classification in heading 9101 is whether the parts are of precious metal.[16] *Id.* at 23-24. Since the screws and washers are not of precious metal, the Government concludes the *watches* are not classified under 9101. *Id.*

Previously, Ildico explained that parts of general use made of precious metal are not practical since screws of gold are soft, such that they can break easily and do not work well to seal a case. Pl.'s Br. at 12. Further, base metal, and even precious metal screws, are *excluded* as parts of watches by Ch. 91, n. 1(c). *Id.* at 24. Parts of general use are also excluded under the ENs to 9111 as parts of cases. *Id.* Again, the Government's interpretation results in the creation of two sets of rules, which one applies depends on whether watches are imported completely or separately as parts. *See* Def.'s Br. at 23-24.

/ /

/ /

---

[16] And, under the Government's interpretation of Ch. 91, n. 2, parts of general use must be of essentially 24k gold or other precious metal. *See* Def.'s Br. at 17.

14

2.  **The Legislative History for Additional US Note 1(b) Shows It Was Designed to Create Uniformity Whether Watch Cases Are Imported as a Whole or as Separate Parts.**

The legislative history to this note reveals that AN1(b) was designed to disincentivize importing parts of watches and clocks separately for tariff advantages. The Explanatory and Background Materials to the Tariff Classification Study (TCS) (Nov. 15, 1960) provides the intent behind the language of Schedule 7, Part 2, Subpart E, Headnote 2(d) (Headnote 2(d)) of the Tariff Schedule of the United States (TSUS) which later became Ch. 91, AN1(b) of the HTSUS. *See* pages from the TCS explanatory and background materials and the proposed tariff provisions along with pertinent provisions from the TSUS of 1987 and from Schedule 3 of the Tariff Act of 1930 attached to the Supplemental Declaration of Mandy Kirschner as Exhibit 15.

"Where ambiguity exists in the phraseology of a statute, it is appropriate to consider extraneous data which may aid in the determination of its meaning." *Am. Exp. Co. v. United States*, 61 Cust. Ct. 208, 210, C.D. 3573, 290 F. Supp. 778, 780 (1968), (citations omitted), *aff'd*, 57 CCPA 100, C.A.D. 985, 426 F.2d 383 (1970).  In determining the meaning of a statute, it is the intent of the legislature that is determinative. *Id.* at 210-11. The TCS is "part of the legislative history of the TSUS," and may be used "to aid the interpretation of [the] HTSUS." *G.G. Marck & Assocs., Inc. v. United States*, No. 08-00306, 2015 WL 3757040 *7 (Ct. Intl. Trade June 17, 2015).  It is one of the most authoritative resources for determining legislative intent. *Am. Rusch Corp. v. United States,* 74 Cust. Ct. 153, 158, C.D. 4598, 394 F. Supp. 1402, 1405 (1975) (providing citations to cases using the TCS).  The TCS provides "significant insight into the breadth of the relevant [tariff] provisions and their relationship to their predecessor provisions." *Nippon Kogaku (USA), Inc. v. United States*, 69 CCPA 89, 93-94, 673 F.2d 380, 383 (1982).

Here, the TCS explains that Congress added Headnote 2(d) to prevent "anomalous" practices by importers which involved Schedule 3, Paragraphs 367 ("Watch movements, timekeeping mechanisms) and 368 (Clocks, clock movements, etc.) of the Tariff Act of 1930. Pl. Ex. 15 at p. 163, 169-71. Because Par. 367 did not include a provision for *parts* of watch cases, importers *separately* imported the three "*principal parts*" of watch cases, the "bezels, centers and backs," made of metal, under the basket heading for metal manufactures, Par. 397, and avoided paying the higher duty rate on watch cases under 367(f). *Id.* at 163, 169-70. Emphasis added.[17] Another "anomalous" practice involved clocks (including travel or easel clocks with watch movements) which were "artificially divided into a number of components" (such as easels, stands, bases, and outer cases)[18] and then classified separately under parts of clocks for tariff purposes. *Id.* at 163, 171.

To protect against these "anomalous" practices of separating the "complete article" into component parts for tariff classification purposes," Congress defined "cases" in the TSUS under Headnote 2(d) (now AN1(b)). *Id.* at 165. Provisions were created for parts of cases (subject to similar duty as complete cases) and provisions defining watches and watch and clock movements were established. *Id.* at 164-71.

At the same time, the TSUS added Headnote 1(ii) to specifically *exclude* screws, nuts and bolts, previously classified under Pars. 367 and 368, from classification as parts of watches and

---

[17] Despite the Government's claim that Ildico's "principal parts argument is without merit," (Def.'s Br. at 21) Congress recognized that watch cases usually have two or three principal parts. Pl.'s Ex. 15 at 163. The focus of the tariff changes regarding watches was to prevent importing these parts separately. *Id.* at 163, 165.

[18] As Ildico explained, AN1(b) is not limited to watch cases, but also applies to, clock cases, which may include other parts, such as easels, stands and bases, etc. that are intended to be covered by AN1(b). Pl.'s Br. at 19-20, 21.

clocks. *Id.* at 164. Instead, the TSUS made these components classifiable under part 3D of Schedule 6. *Id.* Similarly, Headnote 1(iv) continued to *exclude* clock and watch glasses and glass domes from classification as parts of watches and clocks under Subpart E, TSUS (Pl.'s Ex. 15 at bates-stamped 454). Under the TSUS, these would be classified under a different section (Part 3, Schedule 5) (*id.*) as they had been under the 1930 Tariff (Schedule 2 (glassware), Par. 236).[19]

The legislative history of the TCS shows: 1) the revised language regarding watches and clocks was intended to address "anomalous" practices by eliminating the tariff advantages of importing components of watch cases separately and 2) parts of general use and watch glasses were not intended to be included as parts of clock and watch cases. *Id.* at 163-65, 170, bates 454.

The Government's interpretation of AN1(b) goes against the intent of the legislation because it results in two definitions for parts of cases, one that applies to complete watches and one that applies to parts imported separately. By reading AN1(b) apart from all the pertinent Ch. 91 Notes (1(a) & (c)) and tariff headings (*e.g.*, 9111, 9114 (& ENs)), the Government's interpretation is unworkable, as it requires precious metal dials, crystals and parts of general use.[20] Accordingly, no wrist watches could qualify for classification under Heading 9101. Importers would then artificially breakdown watches into their separate components for tariff purposes which

---

[19] Specifically, Subpart E, TSUS, Headnote 1 read:

> This subpart *covers watches and clocks*, time switches and other timing apparatus with clock or watch movements, *and parts of these articles. This subpart, however, does not cover* - -[.]  (Pl.'s Ex. 15 at bates-stamped 454. Emphasis added.)

As such, the exclusions for parts of general use and watch glasses under Headnote 1(ii) & (v) were not meant to be included in the definition of cases under Headnote 2(d).

[20]  Please note: Under the TSUS, dials and their parts were classified separately also. *Id.* at 172.

would result in the type of anomalous practice AN1(b) was designed to prevent. *Id.* at p. 163, 165, 170.

The more sensical approach is one that comports with both the legislative history and the complete tariff language and ENs. "When interpreting HTSUS provisions, we must strive to give effect to every word in the statutory text." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013) and *Corley v. United States*, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009)). It follows, AN1(b) should be read along with the Ch. 91 tariff provisions as a whole and their pertinent explanatory notes. *See, e.g.*, Pl.'s Br. at 3. Accordingly, as Ildico argues in its brief, dials and their parts, watch crystals, parts of general use, etc., are not parts of watch cases covered by AN1(b). *Id.* This essentially leaves the "principal" parts of the watch cases, the bezel, middle and case back. *Id.*; *see also* Pl.'s Ex. 15 at 163, 170.

### 3. The Government's Flawed Interpretation of AN1(b) Nullifies the Term "Wholly of" from Chapter 91 Legal Note 2.

The Government argues that Ildico reads out the term "wholly of" from Ch. 91 n. 2. Def.'s Br. at 22. Instead, it is the Government's interpretation that voids that term and leads to illogical results. Courts should not interpret tariff provisions in such a way that leads to rendering terms "redundant, meaningless, or inoperative." *ME Glob., Inc. v. United States*, 633 F. Supp. 3d 1349, 1368 (Ct. Int'l Trade 2023). The Government argues that under AN1(b), the plastic[21] case back

---

[21] The Government cites to Def.'s. Ex. 4, Shipley Dep. Tr. at 23:7-12. However, the material of the case back gasket is not discussed in the transcript but it is found in the parts diagram provided in Exhibit 3 to the transcript. *See* Shipley Dep. Tr., 15:14-25:1 (Discussing Dep. Tr. Ex. 3). Dep. Tr. Ex. 3 (pertinent page) is attached to Supp. Kirschner Dec. as **Confidential** Ex. 16. The case back gasket is always of NBR (rubber). *See* Pl.'s Br. at 12; Pl.'s Ex. 5; Shipley Dec. at ¶¶46, 63. The Government may have mistakenly stated *case back gasket* when it meant the *back crystal gaske*t.

gasket, found on the Richard Mille watches, and used to seal part of the case, constitutes either a "part or piece" or an "auxiliary or incidental" feature that serves to complete the watch.[22] *Id.* at 18. The Government defines the terms auxiliary or incidental to mean that any "subsidiary, minor, or unimportant" features of the watches are included under AN1(b). *Id.* at 21. The Government concludes that these parts do not meet the *de minimis* exception of GN 3(h)(v)(A) because they are not made of precious metal. *See id.* at 18, 19.

However, first, assuming, *arguendo*, that gaskets are not considered parts of general use, to require sealing gaskets that require flexibility and conformity to be made of precious metal is illogical. Second, the Government's definition of "auxiliary or incidental" features from AN1(b) (Def.'s Br. at 21) cannot override (and void) the language from Ch. 91, Legal Note 2, which specifically provides for *watch cases* "wholly of" but not *completely of* precious metal. Otherwise, it renders meaningless the *de minimis* exception from GN 3(h)(v)(A) that insignificant components, *i.e.,* trifles, do not determine classification. *See* Pl.'s Br. at 18-19, 32-33.

### 4. The Government's interpretation of Legal Note 2 Produces Irrational Results.

The Government interprets Legal Note 2 such that the term "wholly of" applies to the term "precious metal" but not the term "metal clad with precious metal." Def.'s Br. at 15. If the term "wholly of" does not apply to cases of metal clad with precious metal, under the Government's strict interpretation of AN1(b), any components which it considers "parts or pieces" or "auxiliary or incidental features" must be of metal clad with precious metal. First, this assumes that parts

---

The back crystal gasket is always of Hytrel plastic. Shipley Dec. at ¶46; Pl.'s Ex. 16. Either way, this is *not* material since none of the gaskets are of precious metal.

[22] In addition to "parts or pieces," the Government claims that the screws, washers and the synthetic sapphire found on the case back are "auxiliary or incidental" features. Def.'s Br. at 18, 19.

such as crystals, screws, washers, gaskets, etc. are manufactured and function using that material. Second, because the *de minimis* exception, from the definition of "wholly of" provided by GN 3(h)(v)(A), would not apply to metal clad with precious metal, even insignificant, negligible components must be of metal clad with precious metal material.  Consequently, no watches could qualify as watches with cases of metal clad with precious metal under Heading 9101. Instead, the rational approach is that the term "wholly of" applies to watch cases of precious metal *and* cases of metal clad with precious metal (including those of each type that are combined with precious stones).  Ch. 91, n. 2; *see also*, Pl.'s Br. at 18, 33-34.

Additionally, in its interpretation of Legal Note 2, the Government constructively applies the term "wholly of" twice, not only to qualify the contents of the *goods*[23] (the cases) but also to qualify the contents of the named *material* (precious metal). *See* Def.'s Br. at 15, 17. It does so by assuming that "wholly of" only applies to "precious metal" and not to "metal clad with precious metal," so allegedly there is the "context" necessary to define precious metal *without* including precious metal alloys as provided in Ch. 71, n. 6. *Id.* at 17. First, this requires the faulty assumption that "wholly of" does not qualify metal clad with precious metal.  *Id.* at 15. If that were true, then this produces uneven rules. Watch cases of "precious metal" would require, *e.g.*, 24k (100% gold), while metal clad with precious metal would only require "covering" *a base of metal* with precious metal of *any* thickness. Ch. 71, n. 7; ENs to Ch. 71 (regarding Note 7), Pl.'s Br. at 34-35.  This interpretation creates an anomalous result, *i.e.*, a higher standard for precious metal cases than metal clad with precious metal cases even though both types of cases are provided for under heading 9101, duty free.

---

[23] General Note 3(h)(v)(A).

Further, the Government's interpretation requires that even the "principal parts" of cases, the bezel, center and back[24] must be of 100% precious metal. Def.'s Br. at 18. This would mean that virtually no watches from Switzerland would qualify for classification under Heading 9101 since 18k gold is the standard in the Swiss watch industry.  *See* discussion in Pl.'s Br. at 35; Shipley Dec. at ¶24.  This is nonsensical. The Government interprets Legal Note 2 so that watches with cases wholly of precious metal are read out of the statute.

### III.     <u>CONCLUSION</u>

For the reasons set forth herein, Ildico respectfully requests the Court to grant Ildico's Motion for Summary Judgment and deny the Government's Cross-Motion.

Dated: July 12, 2024                          Respectfully submitted,

                                                           //s// *Mandy E. Kirschner*_____

                                              By:    Mandy E. Kirschner
                                                      Stein Shostak Shostak Pollack & O'Hara, LLP
                                                      Attorneys for Plaintiff
                                                      865 S. Figueroa Street, Suite 1388
                                                      Los Angeles, California 90017
                                                      Telephone: (213) 630-8888
                                                      E-Mail: mkirschner@steinshostak.com

---

[24] The Government refers to these parts as the inner, middle and outer case. *See, e.g.*, Def.'s Br. at 6. These terms are for clocks. Pl.'s Ex. 15 at 163, 171; Pl.'s Br. at 21, Pl.'s Ex. 10.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

|                        |     |                              |
|------------------------|-----|------------------------------|
| ILDICO INC             | x   |                              |
|                        | :   |                              |
| Plaintiff,             | :   |                              |
|                        | :   | Court No. 18-00136 & 18-00076 |
| v.                     | :   |                              |
|                        | :   |                              |
| UNITED STATES,         | :   |                              |
|                        | :   |                              |
| Defendant.             | :   |                              |
| _____  | :   |                              |
|                        | x   |                              |

## <u>CERTIFICATE OF COMPLIANCE</u>

Ildico Inc.'s Memorandum of Points and Authorities in Opposition to Defendant's Cross-Motion for Summary Judgment and in Reply to the Government's Opposition to Plaintiff's Motion for Summary Judgment complies with Chambers Procedures word limitation requirement of less than 7,000 words. According to the word processing system used to prepare the Memorandum, there are 6,948 words contained in the Memorandum.

Respectfully submitted,
Stein Shostak Shostak Pollack & O'Hara, LLP

By:    //s// Mandy Kirschner
Mandy Kirschner, Esq.
Attorneys for Ildico Inc.
865 S. Figueroa St., Suite 1388
Los Angeles, CA 90071
(213) 630-8888
E-Mail: mkirschner@steinshostak.com

Dated: July 12, 2024

39