UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| ILDICO INC., | |
| Plaintiff, | Court No. 18-00136 |
| | 18-00076 |
| v. | |
| UNITED STATES, | |
| Defendant. | |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

 

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

Of Counsel:
Fariha Kabir
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

MARCELLA POWELL
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-9230 or 9236
Attorneys for Defendant

Dated: August 13, 2024

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

   I.  ILDICO HAS NOT ESTABLISHED THE ACTUAL IMPORTATION, NATURE AND CHARACTERISTICS OF THE WATCHES AT ISSUE ...................................................... 3

   II.  THE WATCHES AT ISSUE ARE NOT CLASSIFIABLE IN HEADING 9101, HTSUS, BECAUSE THEY DO NOT HAVE CASES "OF PRECIOUS METAL." ........................... 5

      A.  Application of Additional Note 1(b) Precludes Classification In Heading 9101, HTSUS. .................................................................................................................. 6

      B.  The Tariff Classification Study (TCS) Is Irrelevant To The Classification Of The Watches At Issue .................................................................................................. 9

      C.  The *De Minimis* Exception Does Not Apply To The Watches At Issue ...................... 10

      D.  Legal Note 2 To Chapter 91 Directs That The Cases Of Heading 9101 Must Be "Wholly Of" Precious Metal ....................................................................................... 12

   III.  HEADING 9102, HTSUS, IS THE CORRECT CLASSIFICATION FOR THE WATCHES AT ISSUE ............................................................................................... 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Airflow Tech., Inc.*,
  524 F.3d 1287 (Fed. Cir. 2008) ................................................................................. 10

*Conn. Nat. Bank v. Germain*,
  503 U.S. 249 (1992) ..................................................................................................... 6

*G.G. Marck & Assocs., Inc. v. United States*,
  37 ITRD 1568 (Ct. Int'l Trade 2015) ........................................................................ 10

*NEC Elecs., Inc. v. United States*,
  144 F.3d 788 (Fed. Cir. 1998) ................................................................................... 10

*Sharp v. United States*,
  580 F.3d 1234 (Fed. Cir. 2009) ................................................................................... 6

*Varsity Watch Co. v. United States*,
  34 C.C.P.A. 155, 159-60 (1947) ................................................................................ 10

**Harmonized Tariff Schedule of the United States (HTSUS)**

Additional Note 1(b) .................................................................................................*passim*

GN 3(h)(v)(A) ......................................................................................................................... 11

GN 3(h)(v)A(A) ...................................................................................................................... 11

GRI 1 .......................................................................................................................................... 7

Chapter 71 ............................................................................................................................... 12

  Note 6 to Chapter 71 ........................................................................................................ 12

Chapter 91 ................................................................................................................................. 7

  Legal Note 2 to Chapter 91 ................................................................................. 10, 11, 12

  Heading 9101 ............................................................................................................*passim*

  Heading 9102 ......................................................................................................... 2, 13

    Subheading 9102.21.70 ................................................................................................ 14

  Heading 9111

    Explanatory Note to heading 9111 ............................................................................... 7

Heading 9114 ............................................................................................................. 3

**<u>Tariff Schedule of the United States (TSUS)</u>**

Headnote 2(d) ..................................................................................................... 9, 10

367(f) ..................................................................................................................... 10

**<u>Rules</u>**

USCIT Rule 56(c)(4) ................................................................................................. 4

**<u>Other Authorities</u>**

*watch crystal,* Merriam-Webster,
https://www.merriam-webster.com/dictionary/watch%20crystal
(last visited on Aug. 9, 2024). ................................................................................. 5

*back,* Illustrated Professional Dictionary of Horology,
https://dictionary.fhs.swiss/ (last visited on Aug. 9, 2024). ..................................... 5

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| ILDICO INC., | |
| Plaintiff, | Court No. 18-00136 |
| v. | 18-00076 |
| UNITED STATES, | |
| Defendant. | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States (the Government), submits this reply memorandum in further support of its cross-motion for summary judgment.

**INTRODUCTION**

Ildico has failed to provide this Court with evidence that would be admissible at trial to show that the watches identified on the commercial invoices were actually imported, and the nature and relevant characteristics of those watches necessary for a classification determination. Not only are Ildico's documentary proofs incomplete but also its declarants do not have the requisite personal knowledge. Accordingly, Ildico cannot establish that it is entitled to judgment as a matter of law.

Notwithstanding this fundamental failure of proof, Ildico still cannot prevail. The 35 styles of imported Richard Mille brand watches are not classifiable in heading 9101, HTSUS[1],

---

[1] Heading 9101, HTSUS, provides for "[w]rist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal. . . ."

which covers wrist watches with a case "of precious metal."  The watches have synthetic sapphire crystal case backs as well as auxiliary and incidental non-precious metal components (titanium screws and washers, and plastic gaskets) that serve to complete the watch.  Those components are covered by the unambiguous statutory definition of the term "cases."  Therefore, the watches do not have cases "of precious metal."  Because the cases are not of precious metal, classification is appropriate under heading 9102, HTSUS, which provides for watches that are not classifiable in heading 9101, HTSUS.[2]

Ildico attempts to avoid classification in heading 9102, HTSUS, by arguing that the synthetic sapphire crystal case back is actually "watch glass" that is not part of a watch case. Ildico's argument is belied by the "specifications" that Richard Mille provides to customers which refer to the crystal on the back of the watch as the "case back," and not "watch glass." Case backs fall within the statutory definition of the term "cases."  Ildico also argues that if imported separately, the synthetic sapphire crystal and titanium screws and washers would not be classified as parts of a watch or parts of a watch case and, therefore, do not fall within Additional Note 1(b)'s definition of the term "cases."  The classification of separately imported components is not material to the classification of the subject watches as they are imported as fully assembled articles.

Accordingly, this Court should hold that the imported watches are correctly classified in heading 9102.

---

[2] Heading 9102, HTSUS, provides for "[w]rist, watches, pocket watches and other watches, including stop watches, other than those of heading 9101 . . . ."

**ARGUMENT**

I.  **ILDICO HAS NOT ESTABLISHED THE ACTUAL IMPORTATION, NATURE AND CHARACTERISTICS OF THE WATCHES AT ISSUE.**

As a threshold issue, Ildico has the burden of establishing the merchandise it imported into the United States that is the subject of this action.[3] *See, e.g.*, *Sparks Belting Co. v. United States*, 715 F. Supp. 2d 1305 (Ct. Int'l Trade 2010). This is a well-established classification requirement, and not a red herring as Ildico argues. Ildico Mot. at 3. There are 35 styles of highly specialized watches at issue in this case and each bears a unique serial number. Each style possesses features that are not standard to all watches. Ildico has not provided samples of the actual imported watches at issue, representative samples of the styles for the Court's examination, or sufficient credible evidence to establish the actual importation, and nature and characteristics of the watches. In the absence of samples, Ildico has attempted to establish the importation, nature, and characteristics of the watches at issue by way of a patchwork of incomplete photographs, incomplete specifications for generic models of watches, and insufficient declarations. We will address each item of Ildico's proofs below.

First, Ildico provided incomplete photographs of each style of watch at issue. Indeed, the photographs only depict the front of the styles of watches at issue. There is no classification dispute involving the features or components that are present on the front of the watches. Those

---

[3] In its brief, Ildico characterizes its failure to produce actual samples in this action as a discovery dispute and argues that the Government should have filed a motion to compel. Ildico Mot. at 5. However, there is no discovery dispute. Ildico's responses were simply devoid of the necessary factual information to prove its case. On its motion for summary judgment, Ildico has the burden of establishing that the merchandise identified on the commercial invoices was actually imported, and establish the nature and characteristics of that merchandise. We pointed to our discovery requests to demonstrate to the Court that we affirmatively sought samples in discovery in an effort to confirm the nature and characteristics of the imported watches, and without the samples, we cannot admit to certain facts regarding the imported watches.

photographs are insufficient to confirm the features of the watch backs, such as the serial number, the presence of a synthetic sapphire crystal case back, the mating of the titanium screws and washers, and the plastic gasket on the back of the watch, all of which are central to the classification of the imported watches. Additionally, Ildico admitted that the photographs had been altered by the addition of text. *See* Transcript of Deposition of Anton Rubianto (Rubianto Dep. Tr.) at 31:8-20 (explaining the presence of text on the photograph of MON ))). Accordingly, Ildico's photographs should not be considered by the Court.

Additionally, Ildico provided "Diagrams and Images of Representative Watch Parts" for three generic models of watches. *See* Docket No. 35-3. However, Ildico did not provide "images" of "watch parts" for every style at issue in this action. What's more, the provided images are incomplete in that they do not include the third part of the tripartite Richard Mille watch case, which Ildico refers to as the "case back." *See* Ildico Mot. at 18. Ildico has not explained why images of those parts were not provided. The images are insufficient to establish the characteristics of the watches and should not be considered by the Court.

Finally, recognizing that the initial declarations of Michelle Shipley, Watchmaker, and Anton Rubianto, Commercial Director of Ildico, are deficient because they lacked the requisite personal knowledge about the actual imported goods in this case, Ildico has submitted the supplemental declarations of Ms. Shipley and Mr. Rubianto. Those supplemental declarations, however, do not cure the deficiencies in their initial declarations. USCIT Rule 56(c)(4) governs the content of declarations submitted to support a motion for summary judgment and provides:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

USCIT Rule 56(c)(4).

Mr. Rubinato and Ms. Shipley do not have personal knowledge of the actual importation, nature and characteristics of the actual watches at issue in this action. In his supplemental declaration, Mr. Rubianto states that when imported watches are delivered to Ildico, he inspects them and compares them to the commercial invoices. *See* Docket No. 47-1, Supplemental Declaration of Anton Rubianto. Mr. Rubianto does not state that he inspected the actual merchandise in this action, which is fatal to his declaration. Additionally, the fact that Ms. Shipley and Mr. Rubianto are generally "familiar" with certain models of watches at issue is insufficient in a case where there are 35 styles of specialized watches, and their classification is dependent on their nature and characteristics. Because the declarants do not have the requisite personal knowledge, their declarations should be disregarded.

## II. THE WATCHES AT ISSUE ARE NOT CLASSIFIABLE IN HEADING 9101, HTSUS, BECAUSE THEY DO NOT HAVE CASES "OF PRECIOUS METAL."

This case presents a simple, straightforward classification question. The HTSUS and Explanatory Notes provide all the provisions, definitions, and guidance necessary to reach the correct classification for the imported watches. Heading 9101, HTSUS, provides "[w]rist watches, pocket watches and other watches, including stop watches, with case of precious metal or metal clad with precious metal . . . ." Additional Note 1(b) defines the term "cases" as:

> For purposes of this Chapter
>
> The term "cases" "embraces inner and outer cases, containers and housings for movements, together with parts or pieces, such as, but not limited to rings, feet, posts, bases and outer frames, and any auxiliary or incidental features, which (with appropriate movements) serve to complete the watches, clocks, time switches and other apparatus provided for in this chapter.

Here, one of the salient dispositive facts is that the imported watches have synthetic sapphire crystal case backs. In our moving brief, we established that those non-precious metal case backs

fall within Additional Note 1(b)'s definition of the term "cases," and therefore, the imported watches cannot be classified in heading 9101, HTSUS. Ildico presents a myriad of arguments in an attempt to avoid the application of the actual terms Additional Note 1(b) to its fully assembled watches. As we show below, Ildico's arguments are unavailing.

### A. Application of Additional Note 1(b) Precludes Classification In Heading 9101, HTSUS.

The correct classification of the watches at issue turns on whether their "cases" are "of precious metal." *See* Heading 9101, HTSUS. The bedrock principle of statutory interpretation is to give effect to every word in a statute. *Sharp v. United States*, 580 F.3d 1234, 1237 (Fed. Cir. 2009) ("Where the intent is unambiguously expressed by the plain meaning of the statutory text, we give effect to that clear language without rendering any portion of it meaningless."). Additional Note 1(b) unambiguously defines the term "cases" such that it includes many pieces comprising a complete watch case, including the case back. Ildico argues, however, that Additional Note 1(b)'s definition of the term "cases" only covers the "principal parts" of a watch case. Ildico Mot. at 18 ("Ildico argues in its brief, dials and their parts, watch crystals, parts of general use, etc., are not parts of watch cases covered by ANI(b). This essentially leaves the 'principal' parts of the watch cases, the bezel, middle and case back."). The term "principal parts," however, does not appear in Additional Note 1(b), and Ildico cannot simply read terms into the statute. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . ." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Consequently, Ildico's interpretation of Additional Note 1(b) should be rejected.

Ildico also attempts to undermine the Government's reading of Additional Note 1(b) by arguing that it is overly broad and creates a paradigm that treats the classification of imported fully assembled watches differently than separately imported parts of a watch. Ildico Mot. at 17.

6

The merchandise at issue in this case are fully assembled watches. Notwithstanding, Ildico first argues that the Government's interpretation of the term "cases" in Additional Note 1(b) is overly broad because it includes components of watches that would not be classifiable as part of a watch case if imported separately. Specifically, Ildico argues that under the Government's interpretation, "if something is a 'part or piece' which 'serves to complete' a watch, it is *per se* part of a watch case." Ildico Mot. at 13. To bolster its argument, Ildico points to the fact that a separately imported "dial" is not classifiable as "part of the watch case" because it is classifiable in heading 9114, HTSUS. *Id*. at 13. But, according to Ildico, under the Government's broad interpretation of Additional Note 1(b), the dial would be a "piece or a part" of a case covered by the Note. *Id*. Ildico misconstrues our position and misunderstands Additional Note 1(b).

First, there are no separately imported watch dials or any other components at issue in this action. Moreover, the express terms of Additional Note 1(b) establish that the scope of the term "cases," for purposes of Chapter 91, extends beyond the housings, cases, and containers for the movement, and embraces those "auxiliary" and "incidental" components that serve to complete the watch. For purposes of classification in heading 9101, HTSUS, the Note identifies those components that fall within the term "case" that must be "of precious metal." The Note, however, does not direct how separately imported components of a watch are to be classified in the HTSUS. Indeed, classification of those components, if imported alone, would be based on the terms of the relevant headings and applicable legal notes. *See* GRI 1.

Ildico further asserts that the Government's reading of Additional Note 1(b) is flawed because the watches at issue have two "watch glasses" or "watch crystals," namely, the synthetic sapphire crystal on the front of the watch and the synthetic sapphire crystal on the back. Ildico Mot. at 13. Ildico posits that if the Government contends that Additional Note 1(b)'s definition

7

of the term "cases" embraces the synthetic sapphire crystal case back, then it follows that the front crystal must also be embraced by that definition. *Id*. at 13. Ildico speculates that if the front crystal must be "of precious metal," "the front crystal would be opaque." *Id*. "This would be untenable since a watch crystal must be transparent for the watch user to tell time." *Id*. at 13. The fatal flaw in Ildico's argument is that it speculates that the front "watch glass" or "watch crystal" could never be part of a watch case. Ildico is mistaken. A separately imported "watch case" <u>with</u> watch glass is classified as "watch case." *See* Explanatory Note to heading 9111, HTSUS ("Watch Cases and Parts Thereof") (" This heading covers: (A) Cases for the watches of heading 91.01 or 91.02 (pocket-watches, wrist-watches, chronograph watches, etc.), with or without glasses, presented without movements.")

      Ildico's argument is also flawed because it is predicated on the incorrect notion that the synthetic sapphire crystal on the back of the watch is a second "watch crystal" or "watch glass." It is not. A "watch crystal" is defined as "a concavo-convex glass covering the dial of a watch: called watch glass." https://www.merriam-webster.com/dictionary/watch%20crystal (last visited on Aug. 9, 2024). A watch case "back" is defined as "the cover on the opposite side of the dial." Illustrated Professional Dictionary of Horology (https://dictionary.fhs.swiss/?l=en last visited on Aug. 9, 2024). The synthetic sapphire crystal on the backs of the watches are "case backs." In fact, the Richard Mille's watch "specifications" expressly refer to the synthetic sapphire on the backs of the watches as a "case back." Indeed, the specifications state:

> **CRYSTAL**
> Bezel side: In sapphire (1800 Vickers) with anti-glare treatment (both sides).
> Thickness: 1.20 mm
> Case back: In sapphire with anti-glare treatment (both sides).
> Thickness: at the center 1 mm and outer edges 1.73 mm

*See* Docket No, 35-1 at 53, 59. The synthetic sapphire case back is covered by Additional Note 1(b) as it is the portion of the case, container or housing for the movement that covers the back of the watch and protects the movement from dirt and moisture and serves to complete the watch.

Ildico next argues that the Government's broad interpretation of Additional Note 1(b) incorrectly covers the titanium screws and washers that serve to hold the watch case together. Ildico Mot. at 14. According to Ildico, screws made of precious metal are classifiable as "parts of general use" and thus excluded from classification as parts of watches and parts of cases. The titanium screws and washers are not separately imported. The screws and washers are embedded in the imported fully assembled watches and are a signature feature of the aesthetic of a Richard Mille watch case. They serve to complete the watch and are covered by Additional Note 1(b). *See, e.g.,* Ex. Docket No. 35-1 at 57.

### B. The Tariff Classification Study (TCS) Is Irrelevant To The Classification Of The Watches At Issue.

According to Ildico, the purpose of Additional Note 1(b) was designed to disincentivize the importation of parts of watches and parts of clocks separately to obtain a lower duty rate. Ildico Mot. 15-18. According to Ildico, the Tariff Classification Study (TCS) explains that Congress added Headnote 2(d)[4] (precursor to Additional Note 1(b)) to the Tariff Schedules of the United States (TSUS) to prevent importers from tariff engineering. At that time, the TSUS did not have a provision for parts of watch cases. Therefore, importers separately imported the three

---

[4] Headnote 2(d) provided:

> The term "cases" "embraces inner and outer cases, containers and housings for movements, together with parts or pieces, such as, but not limited to rings, feet, posts, bases and outer frames, and any auxiliary or incidental features, which (with appropriate movements) serve to complete the watches, clocks, time switches and other apparatus provided for in this subpart.

principal parts of watch cases, "bezels, centers and backs" made of metal and classified those components under the basket provision for manufactures of metal. This practice allowed importers to avoid paying the higher duty rate on watch cases under TSUS Item 367(f). According to Ildico, Congress defined the term "cases" in the TSUS under Headnote 2(d) (now Additional Note 1(b)) and created tariff provisions for parts of cases, provisions for watches, and provisions for watch and clock movements. Ildico argues that the legislative history in the TCS establishes that Additional Note 1(b) should not be interpreted in a way that treats the classification of complete watches differently than separately imported parts. Ildico Mot. at 17. Ildico is incorrect.

In the absence of a definition of a term in the HTSUS, or an Explanatory Note to clarify a term's meaning, legislative history may be considered in resolving a classification dispute. *G.G. Marck & Assocs., Inc. v. United States*, 37 ITRD 1568 (Ct. Int'l Trade 2015); *Airflow Tech., Inc.*, 524 F.3d 1287, 1290–91 (Fed. Cir. 2008); *NEC Elecs., Inc. v. United States,* 144 F.3d 788, 791 (Fed. Cir. 1998); *Varsity Watch Co. v. United States*, 34 C.C.P.A. 155, 159-60 (1947). Additional Note 1(b) provides a clear and unambiguous definition of the term "cases," and Ildico has not pointed to any terms within that definition that are ambiguous. Thus, resort to the TSC is unnecessary.

   C. **The *De Minimis* Exception Does Not Apply To The Watches At Issue.**

Ildico argues that the Government's interpretation of Legal Note 2 to Chapter 91 is incorrect because it requires "sealing gaskets that require flexibility and conformity to be made of precious metal." Ildico Mot. at 18-19. The Note does not "require" that the Richard Mille use sealing gaskets made of precious metal or any other material in its watches. The Note makes clear that classification in heading 9101, HTSUS, requires that components that fall within

Additional Note 1(b)'s definition of "cases" must be "wholly of" precious metal.  Because the watches at issue do not satisfy those requirements, they are not classifiable in heading 9101, HTSUS.

Ildico also argues that the Government's definition of the terms "auxiliary or incidental" in Additional U.S. Note 1(b) cannot "override (and void)" the language from Legal Note 2 which provides for "watch cases 'wholly of' but not completely of precious metal." *Id*. at 19.  Ildico further argues that such an interpretation would render "meaningless the *de minimis* exception from GN 3(h)(v)(A)[5] that insignificant components" do not determine classification.  *Id*. at 19.  Ildico's reliance on the *de minimis* exception in General Note 3(h)(v)A(A) is entirely misplaced.  General Note 3(h)(v)(A) defines the term "wholly of" for purposes of the HTSUS, and contains a "*de minimis*" exception.  *See* General Note 3(h)(V)A) ("With regard to the application of the *quantitative* concepts above, it is intended that the *de minimis* rule apply.") (emphasis added).  The plastic gasket is not an "insignificant component" as it adheres the synthetic sapphire case

---

[5] (h).   Definitions.  For the purpose of the tariff schedule, unless the context otherwise requires-

   (v)   the terms "wholly of", "in part of", and "containing", when used between the description of an article and a material (e.g., "woven fabrics, wholly of cotton"), have the following meanings:

   (A) "wholly of" means that the goods are, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material;

   \*   \*   \*

   With regard to the application of the quantitative concepts above, it is intended that the *de minimus* rule apply

back to the gold alloy frame thereby assisting in the completion of the watch.  *See* Declaration of Michelle Shipley at ¶46.

      **D.**      **Legal Note 2 To Chapter 91 Directs That The Cases Of Heading 9101 Must Be "Wholly Of" Precious Metal.**

Ildico argues that the Government incorrectly interprets the term "wholly of" in Legal Note 2 to Chapter 91 as not applying to the term "metal clad with precious metal."  Ildico Mot. at 19.  The Government's interpretation is correct.  Note 2 states that heading 9101 covers only "watches with case *wholly of precious metal* or *of metal clad with precious metal*."  (emphasis added).  The term "metal clad with precious metal" is defined by in Note 6 of Chapter 71 which states:

> Throughout the tariff schedule the expression "metal clad with precious metal" means material made with a base of metal upon one or more surfaces of which there is affixed by soldering, brazing, welding, hot-rolling or similar mechanical means a covering of precious metal.  Except where the context otherwise requires, the expression also covers base metal inlaid with precious metal.

Note 6, Chapter 71, HTSUS.

Based on the language of Note 6, "metal clad with precious metal" is a base metal with precious metal affixed to it.  Thus, "wholly of precious metal" and "metal clad with precious metal" each describe two categories of goods composed of different materials.  Ildico does not allege that its fully assembled watches have cases of "metal clad with precious metal," and we have established that the cases of the subject watches are not "of precious metal."

**III.   HEADING 9102, HTSUS, IS THE CORRECT CLASSIFICATION FOR THE WATCHES AT ISSUE.**

Heading 9102, HTSUS, provides for "[w]rist watches, pocket watches and other watches, including stop watches, other than those of heading 9101." We have established that the imported watches at issue are not classifiable in heading 9101, HTSUS, because they do not have cases "of precious metal." Therefore, heading 9102, HTSUS, is the correct classification for the imported watches.

## CONCLUSION

For these reasons and the reason stated in our moving brief, the Court should grant the Government's cross-motion for summary judgment, find that the merchandise at issue is classifiable in subheading 9102.21.70, HTSUS, deny Ildico's motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

    Respectfully submitted,

    BRIAN M. BOYNTON
    Principal Deputy Assistant
    Attorney General

    PATRICIA M. McCARTHY
    Director

    JUSTIN R. MILLER
    Attorney-In-Charge
    International Trade Field Office

    /s/ Aimee Lee
    AIMEE LEE
    Assistant Director

    /s/ Marcella Powell
    MARCELLA POWELL
    Senior Trial Counsel
    Department of Justice, Civil Division
    Commercial Litigation Branch
    26 Federal Plaza – Suite 346
    New York, New York 10278
    (212) 264-1873
    Attorneys for Defendant

DATED:  August 13, 2024

**CERTIFICATE OF COMPLIANCE PURSUANT TO
USCIT STANDARD CHAMBER PROCEDURE 2(B)**

I, Marcella Powell, Senior Trial Counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 3740 words.

<u>/s/ Marcella Powell</u>